[Civ. No. 23812. Third Dist. Aug. 12, 1986.]

RETIRED PUBLIC EMPLOYEES' ASSOCIATION OF
CALIFORNIA et al., Plaintiffs and Appellants, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*See footnote 1, *post*, page 379.

**COUNSEL**

Charles A. Zeller and N. Deane Moore for Plaintiffs and Appellants.

Bernard L. Allamano and Philip E. Callis as Amici Curiae on behalf of Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Faith J. Geoghegan, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

BLEASE, J.—Retired Public Employees' Association of California and N. Deane Moore, plaintiffs below, appeal from a judgment granting defendant Board of Administration, Public Employees' Retirement System's (Board) motion for judgment on the pleadings. In the published portion of this opinion we consider the plaintiffs' claim[1] that the Board's use of sex-based actuarial tables to compute optional retirement benefits violates title VII of

---

[1] The Reporter of Decisions is directed not to publish part III of the Discussion. In all other respects the opinion is to be published.

the Civil Rights Act of 1964, 42 United States Code section 2000e et seq.[2] The trial court concluded that relief is precluded by the United States Supreme Court's decision in *Arizona Governing Committee v. Norris* (1983) 463 U.S. 1073 [77 L.Ed.2d 1236, 103 S.Ct. 3492]. We agree with that conclusion on the separate ground that the state courts lack jurisdiction to entertain a claim predicated upon title 42 United States Code section 2000e-2. In the unpublished portion of the opinion we reject the plaintiffs' equal protection claims. Accordingly, we will affirm the judgment.

### FACTS

Government Code sections 20000 et seq. comprise the Public Employees' Retirement Law. Section 20600.1 prohibits the use of sex-based tables for the determination of employees' retirement contributions or benefits.[3] However, in lieu of a retirement allowance for his life alone, a member may elect an optional plan whereby his retirement allowance is lessened and an allowance is paid to his beneficiary after his death. (See Gov. Code, §§ 21330-21339.) The prohibition on sex-based tables does not apply to "the computation of the actuarial equivalents required under this part for the determination of optional payments." (§ 20600.1)

Until July 1, 1982, the Board used actuarial tables which differentiated on the basis of sex to compute the optional benefits. Because of a concern that use of such tables was a prohibited discrimination,[4] the Board adopted by resolution "single, best-factor" tables in lieu thereof. These tables are "effective for all retirements on or after July 1, 1982, of individuals who were members of the System prior to July 1, 1982 . . . ."[5]

---

[2]42 United States Code section 2000e-2 provides in pertinent part: "(a) . . . It shall be an unlawful employment practice for an employer— [¶] (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."

[3]Section 20600.1 provides: "Notwithstanding any other provision of this part, separate rates of contributions for male and female members shall not be established or maintained, nor shall different benefit factors be established for male and female members in the same category, provided, that this section shall not apply to the computation of the actuarial equivalents required under this part for the determination of optional payments.

"The amendments to this section at the 1977-78 Regular Session of the Legislature shall be operative from January 1, 1977."

[4]The Board's April 21, 1982, resolution which adopted new actuarial tables for optional settlements states: "WHEREAS, judicial precedent is now well established prohibiting discrimination on the basis of sex"; and "WHEREAS, the Chief Counsel has urged the Board to eliminate benefit differentiation based on sex; . . ."

[5]The resolution also provides that "unisex" tables will be adopted for individuals who become members of the system on or after July 1, 1982.

 ██

Plaintiff N. Deane Moore elected an optional settlement plan at the time of his retirement, inferably prior to July 1, 1982. Plaintiffs filed this action labeled as a complaint for declaratory relief but sought to certify a class of "all persons who have received and/or are presently receiving monthly retirement or survivor allowances from the PUBLIC EMPLOYEES' RETIREMENT SYSTEM which are different in amount from those received by retired members of similar age and circumstances and their beneficiaries on account of the use of sex-based tables in calculating an optional settlement." The complaint alleges: the Board has used sex-based tables to compute optional retirement settlements since January 1, 1977; retirees with female beneficiaries receive a lower monthly retirement allowance than do retirees with male beneficiaries; different benefit allowances result from the use of sex-based tables; the Board took formal action to cease the use of sex-based tables for members retiring on or after July 1, 1982, who choose an optional plan; the Board adopted a "best-benefit factor" plan for those retirees; the Board failed to recognize the right of plaintiffs to the same or better treatment. Plaintiffs further allege that all members of the class have been denied equal protection of the law and have been discriminated against solely on the basis of sex in violation of title VII of the Civil Rights Act of 1964, 42 United States Code section 2000e et seq.

The plaintiffs sought a declaration of the rights and duties of the parties pursuant to title VII and a judgment recalculating plaintiff class members' optional benefits. The Board was granted a judgment on the pleadings on the ground that the relief requested cannot be granted as a matter of law, relying upon *Arizona Governing Committee* v. *Norris, supra.* This appeal followed.

DISCUSSION

I

█ A judgment on the pleadings has the same purpose and effect as a general demurrer. (See *Colberg, Inc.* v. *State of California* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3]; 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 164, p. 2819.) It is appropriate if the complaint fails to "state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) The trial court concluded that *Norris, supra,* 463 U.S. 1073 was dispositive of plaintiffs' title VII claim because it is "applicable only prospectively to future benefits derived from contributions collected after the effective date of the judgment [1983]." █ As we shall show *Norris* is predicated upon judicial remedies provided in title VII which lie exclusively in the federal district courts.

In *Norris, supra,* the Supreme Court addressed the question whether title VII of the Civil Rights Act of 1964 prohibits an employer from offering optional retirement plans through insurance companies selected by the employer which pay women lower monthly benefits than men who have made the same contributions. It relied on its earlier decision in *Los Angeles Dept. of Water & Power* v. *Manhart* (1978) 435 U.S. 702 [55 L.Ed.2d 657, 98 S.Ct. 1370], which held that title VII prohibits an employer from requiring women to make larger contributions in order to obtain the same retirement benefits as men.

*Manhart* distinguished between the rights conferred by title VII and remedies provided by title VII for invasion of the rights. As to rights, *Manhart* held that the practice of requiring greater contributions from women "does not pass the simple test of whether the evidence shows 'treatment of a person in a manner which but for that person's sex would be different.'" (435 U.S. at p. 711 [55 L.Ed.2d at p. 667]; fn. omitted.) That principle, of course, applies as much to retirement benefits as to retirement contributions. Neither can be predicated upon a distinction based upon sex.

However, a different question is posed with respect to the remedy provided by title VII. On this point *Manhart* says that "Title VII does not require a *district* court to grant any retroactive relief. A court that finds unlawful discrimination 'may enjoin [the discrimination] . . . and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement . . . with or without back pay . . . or any other equitable relief as the court deems appropriate.' 42 U.S.C. § 2000e-5(g) (1970 ed., Supp. V)." (*Manhart, supra,* 435 U.S. at p. 718 [55 L.Ed.2d at p. 671]; italics added.)[6] *Manhart* did stress that under *Albemarle Paper Co.* v. *Moody,* (1975) 422 U.S. 405 [45 L.Ed.2d 280, 95 S.Ct. 2362] there is a "presumption in favor of retroactive liability [which] can seldom be overcome . . . ." (*Id.,* at p. 719 [55 L.Ed.2d at p. 672].) Similarly, *Norris* made a distinction between title VII rights and remedies. It noted that "*Manhart* squarely rejected the notion that, because women as a class live longer than men, an employer may adopt a retirement plan that treats every individual woman less favorably than every individual man. [Citations.]" (*Id.,* 463 U.S. at p. 1083 [77 L.Ed.2d at p. 1248].) Although *Manhart* involved unequal contributions and *Norris* involved unequal benefits, the *Norris* court

---

[6]Nonetheless, the court denied retroactive relief because "[t]here is no reason to believe that the threat of a backpay award is needed to cause other administrators to amend their practices to conform to this decision" and because of "the potential impact which changes in rules affecting insurance and pension plans may have on the economy." (*Manhart, supra,* at pp. 720-721 [55 L.Ed.2d at p 673].) *Manhart* did not consider the issue of the appropriate remedy where the retirement benefits are unequal.

had "no hesitation in holding . . . that the classification of employees on the basis of sex is no more permissible at the pay-out stage of a retirement plan than at the pay-in stage." (*Id.*, at p. 1081 [77 L.Ed.2d at pp. 1246-1247]; fn. omitted.) The court then proceeded to consider whether the statute applied when the state delegated the method of calculation of retirement benefits to third parties,[7] i.e., private insurance companies chosen by the state.[8] The court concluded the state was legally responsible for the discriminatory terms on which the annuities were offered by the companies.[9]

Liability was deemed to be prospective only, however. The court noted that *Manhart* "put all employer-operated pension funds on notice that they could not 'requir[e] that men and women make unequal contributions to [the] fund,' [citation] . . . ." (*Norris, supra,* 463 U.S. at p. 1106 [77 L.Ed.2d at p. 1262.) However, the court expressed concern that ambiguous language in *Manhart* may have led an employer to reasonably assume that it could lawfully make available to its employees annuities offered by insurance companies on the open market, even though such companies used sex-based tables. The court asserted that to hold employers liable retroactively would have devastating results. (*Id.*, at p. 1106 [77 L.Ed.2d at p. 1263].) "[I]n view of the question left open in *Manhart,*" the court refused "to impose this magnitude of burden retroactively on the public." (*Id.*, at p. 1107 [77 L.Ed.2d at p. 1263].) Therefore, it held that although "retroactive relief is normally appropriate in the typical Title VII case," liability would be prospective only. "[O]nly benefits derived from contributions collected after the effective date of the judgment need be calculated without regard to the sex of the employee." (*Id.*, at p. 1107, fn. 12 [77 L.Ed.2d at p. 1263].)[10]

---

[7]The court noted that "Title VII 'primarily govern[s] relations between employees and their employer, not between employees and third parties.'[16] [Citation.]" (*Norris, supra,* 463 U.S. at p. 1086 [77 L.Ed.2d at p. 1250].) The court's footnote 16 provides: "The statute applies to employers and 'any agent' of an employer. 42 U.S.C. § 2000e(b)."

[8]The State of Arizona offered its employees the opportunity to enroll in a deferred compensation plan administered by the Arizona Governing Committee. The state invited private companies to submit bids outlining the investment plans they would offer state employees; the state then selected several companies to participate in the deferred compensation plan. (*Norris, supra,* at p. 1076 [77 L.Ed. 2d at p. 1243].)

[9]"Having created a plan whereby employees can obtain the advantages of using deferred compensation to purchase an annuity only if they invest in one of the companies specifically selected by the State, the State cannot disclaim responsibility for the discriminatory features of the insurers' options." (*Id.*, at p. 1089 [77 L.Ed.2d at p. 1252]; fn. omitted.)

[10]"Manhart did put all employer-operated pension funds on notice that they could not 'requir[e] that men and women make unequal contributions to [the] fund,' *id.*, at 717, but it expressly confirmed that an employer could set aside equal contributions and let each retiree purchase whatever benefit his or her contributions could command on the 'open market,' *id.*, at 718. Given this explicit limitation, an employer reasonably could have

## II

*Manhart* and *Norris* involve specific applications of section 706 of title VII (42 U.S.C. § 2000e-5) which sets forth the federal statutory remedies for violation of 42 United States Code section 2000e-2. As will be shown, that section provides that a judicial remedy lies only in a federal district court. That being the case, the state courts lack jurisdiction to hear such an action.

The Ninth Circuit Court of Appeals has recently held that the federal courts possess exclusive jurisdiction over title VII actions. (*Valenzuela* v. *Kraft, Inc.* (9th Cir. 1984) 739 F.2d 434, accord *Dyer* v. *Greif Bros., Inc.* (9th Cir. 1985) 755 F.2d 1391.) *Valenzuela,* following *Gulf Offshore Co.* v. *Mobil Oil Corp.* (1981) 453 U.S. 473, 478 [69 L.Ed.2d 784, 791, 101 S.Ct. 2870], states that a court should "begin[] with the presumption that state courts enjoy concurrent jurisdiction. . . . [T]he presumption . . . can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." (*Valenzuela,* at p. 435; see also *Calif. Satellite Systems, Inc.* v. *Nichols* (1985) 170 Cal.App.3d 56, 65-66 [216 Cal.Rptr. 180].) Although there is no explicit directive in the provisions under consideration, *Valenzuela* concluded that there was exclusive federal jurisdiction on the ground that the remedial provisions of title VII show an "'unmistakable implication' of federal jurisdiction" which rebuts the presumption that state courts enjoy concurrent jurisdiction. We will not repeat the *Valenzuela* reasoning. We will conclude for the reasons which we next discuss that the Ninth Circuit decision is correct.

The pertinent enforcement provisions of title VII at issue in *Norris* and *Manhart* are contained in 42 United States Code section 2000e-5. The section specifically addresses the remedies available for an "unlawful employment practice occurring in a State, or political subdivision of a State . . . ." (§§ 2000e-5(c) and (d).) Subsection (f) provides that as a prerequisite to a civil action, a charge must be filed with the federal Civil Rights Commission. Subsection (c) provides that where the respondent is a state or its political subdivision and the state has a local law prohibiting the unlawful employment practice, resort must first be had to that law. If these conditions have been met and the respondent is a "government, governmental agency, or political subdivision" and the commission has been unable to secure an acceptable conciliation agreement, the commission is directed to refer the case to the

---

assumed that it would be lawful to make available to its employees annuities offered by insurance companies on the open market." (*Norris, supra,* 463 U.S. at p. 1106 [77 L.Ed.2d at pp. 1262-1263].)

Attorney General "who may bring a civil action against such respondent in the appropriate *United States district court.*" (Italics added.) An aggrieved party may intervene in such an action. (*Ibid.*) If no such action is instituted, the aggrieved party may institute a civil action. The only implication to be drawn from subsection (f) is that this action must be brought in a federal district court for the section provides that "the court may . . . stay further proceedings . . . pending the termination of State or local proceedings described in subsections (c) . . . ." That section, as noted, refers to actions brought under *state* law. It is manifest that 42 United States Code section 2000e-5 contemplates federal remedies as the exclusive means for redress of a violation of section 2000e-2.

III*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.

---

*See footnote 1, *ante,* page 378.