[No. A033870. First Dist., Div. One. Mar. 25, 1987.]

SAFEWAY STORES, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
LINDA LEE, Real Party in Interest.

**COUNSEL**

Wesley J. Fastiff, Wendy L. Tice-Wallner, Littler, Mendelson, Fastiff & Tichy, Barbara A. Silver, Laura Przetak and Berry & Berry for Petitioners.

No appearance for Respondent.

Scott Lueders for Real Party in Interest.

## Opinion

HOLMDAHL, J.—Petitioner employer, joined by its voluntary plan administrator, seeks mandate from this court to compel respondent to grant their motions for judgments on the pleadings.

Our peremptory writ will issue.

### Statement of Facts

Safeway Stores, Inc. (hereafter, Safeway) and Voluntary Plan Administrators, Inc. (hereafter, VPA) are defendants below in a suit brought by real party Linda Lee, which alleges common law claims for breach of insurance contract, breach of the covenant of good faith and fair dealing, fraud, intentional infliction of emotional distress, and sexual discrimination in violation of title VII of the Civil Rights Act of 1964, 42 United States Code section 2000e et seq. (hereafter, Title VII).

The facts alleged in the complaint are these:[1]

In accordance with California Unemployment Insurance Code section 3251 et seq.,[2] Safeway provided its employees a disability insurance plan. Safeway's plan was a "voluntary" plan under the code. Lee had filed a claim under the plan seeking payments for disability relating to her pregnancy; the claim sought benefits for a period of time which predated her anticipated date of delivery by more than four weeks. Safeway and VPA refused the claim according to a policy of rejecting all claims for pregnancy-related disability predating the anticipated delivery date by more than four weeks. Further, Safeway and VPA failed and refused properly to investigate the circumstances of Lee's claim, with the result that she was denied benefits and compelled to incur attorney's fees and expenses in pursuing appeals. Lee was, however, awarded benefits through the administrative appeals mechanism provided by the Unemployment Insurance Code.

Petitioners argued below, as they do here, that Lee is limited upon denial of disability benefits to administrative remedies provided by the Unemployment Insurance Code. Thus, they contend, she may not pursue common law remedies against them, and their motions for judgments on the pleadings[3]

---

[1]Lee filed the claim as a class action; however, no class had been certified at the time of the motion for judgment on the pleadings. Thus, while the causes of action are alleged on behalf of a purported class, we describe them solely with regard to real party in interest Lee.

[2]Unless otherwise noted, further statutory references are to the Unemployment Insurance Code.

[3]Such a motion has the purpose and effect of a general demurrer; on review we test it by the same rules. (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3].)

should have been granted. In addition, they urge that jurisdiction over her Title VII claim is exclusively within the province of the federal courts, so that judgment should at least have been entered in their favor on that count.

■ While rulings on pleadings are normally not reviewed by extraordinary writ, "upon occasion our attention is drawn to instances of such grave nature or of such significant legal impact that we feel compelled to intervene through the issuance of an extraordinary writ." (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) The questions presented here are important to the public, bench, and bar. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 140 [137 Cal.Rptr. 14, 560 P.2d 1193].)

### Unemployment Compensation Disability Act, Generally

Enacted in 1946, the Unemployment Compensation Disability Act (hereafter, Act) "provides benefits for persons who are unable to work because of non-occupational illness or injury. It thus fills the gap between workmen's compensation, which provides benefits for disability incurred during employment, and unemployment insurance, which affords benefits for involuntary unemployment suffered by persons who are physically able to work. The act is financed by a ... contribution of each worker's wages. ... [i]t authorizes coverage under the State Disability Fund or under voluntary plans, which can be self-insured or insured by a qualified insurance company." (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 829 [27 Cal.Rptr. 19, 377 P.2d 83].)

Unemployment Insurance Code section 3251 et seq., set forth the provisions of the Act governing voluntary plans.[4] Certain stringent requirements must be met before a voluntary plan is approved by the Director of Employment Development (§ 3254). Approval of a voluntary plan may be withdrawn if the director finds "there is a danger that the benefits ... will not be paid, that the security for such payment is insufficient, or for other good cause" (§ 3262), and the employer, the employees or the insurer may appeal that decision. In addition, other provisions interconnect the voluntary plan scheme with the State Disability Fund (hereafter, Disability Fund) and also with the unemployment compensation provisions of the Act.[5]

---

[4]Under section 3251 either an employer or the majority of an employer's employees in the state, or both, may apply to the Director of Employment Development for approval of a voluntary plan.

[5]See e.g., section 3258 (bond requirement); section 3265 (failure of employer or insurer to pay benefits within 15 days of successful employee appeal); sections 3267 and 3268 (exchange of information with director of disability fund); section 2712 (disputes between disability fund and voluntary plan to be resolved by California Unemployment Appeals Board, which is established by § 401 et seq.).

## Section 3264 as the Exclusive Remedy

The Act provides, as well, a remedy for the employee denied disability benefits in whole or in part under an approved voluntary plan. Section 3264 provides: "If any employer or insurer wholly or partially denies liability upon the claim of an employee for disability benefits under an approved plan, the employee may appeal the denial in the manner provided by law and authorized regulations for an appeal on a claim for benefits payable out of the Disability Fund. All decisions of the Appeals Board denying benefits under this section shall be subject to review by the courts of this State by the exclusive remedy of filing a petition for writ of mandate. No such petition may be filed, however, until the employee exhausts the administrative remedies provided for in this division, *nor may any other action be commenced by an employee upon a denial of his claim by his employer or insurer, as the case may be, other than that prescribed herein.*" (Italics ours.)

■ Petitioners argue that by its terms section 3264 provides an exclusive remedy for an employee such as Lee, so that the superior court lacks jurisdiction over the common law claims filed by her. We agree.

Section 3264, we believe, is unambiguous: It provides a mechanism for an employee to challenge the denial of a claim for disability benefits, and it specifies that no other action may be commenced by the employee so aggrieved. ■ "The meaning of the words of a statute or, to use the alternative approach favored by many courts, the intent of the Legislature, can only be determined with reference to the context in which the words are used; that is, with reference to such purpose as may be discerned from examining the entire enactment of which the words are part. A statutory phrase may be said to be clear and unambiguous if the meaning assigned to it is not in conflict with other language in the same act." (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614 [200 Cal.Rptr. 575], and cases cited therein; fn. omitted.)

■ The inferences we draw from the Act as a whole correspond to what we consider to be the plain meaning of section 3264. The purpose of the unemployment disability benefits statutes "is to compensate in part for the wage loss sustained by individuals unemployed because of sickness or injury and to reduce to a minimum the suffering caused by unemployment resulting therefrom." (§ 2601.) As we have noted, the disability benefits scheme fills the gap between workers' compensation insurance and unemployment insurance, provides coverage to employees either through the Disability Fund or under voluntary plans approved and monitored by the Director of Employment Development, and is financed by a tax on wages of employees themselves. The right to benefits is one created by the statute. And, as we observed

in *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 301 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015] " 'where a new right, — one not existing at common law, is created by statute and a statutory remedy for the infringement thereof is provided, such remedy is exclusive of all others. [Citations.]' "

In effect, Lee asks us to rewrite section 3264 to provide that claimants whose disputes with voluntary plans are resolved by the appeals board— even favorably to them, as here—may go on to seek damages in a court action under any one of the multitude of theories of recovery available to parties to insurance contracts, including breach of insurance contract, tortious bad faith, fraud, and intentional infliction of emotional distress, all as alleged by Lee. Damages recoverable in such actions could, of course, include actual, general and special, exemplary and punitive, and interest and attorney's fees, all as sought by Lee. Ipso facto, such a monumental revision of the statutory scheme would potentially make available similar rights to *all* employees in this state who are denied unemployment disability benefits, including those covered by the Disability Fund, as well as those covered by voluntary plans. We are aware of no statutory or case law providing that an employee denied rights under a voluntary plan has greater rights than an employee denied benefits from the Disability Fund. Nothing in the Act suggests that the Legislature intended to subject either voluntary plans or the Disability Fund to tort claims. Indeed, the nature of the financing of the benefits provided by the Act (a tax on employees, measured by their wages) suggests the opposite.

In any event, the wholesale revision of the statutory plan proposed by Lee is not, we believe, within our power. "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) ■ "If the Legislature believes that the law should be otherwise, it may change it by statutory amendment. Until and unless that occurs it is the function of this court to apply the statute as written." (*Blakey* v. *Superior Court* (1984) 153 Cal.App.3d 101, 107 [200 Cal.Rptr. 52].)

■ We are not pursuaded by Lee's several specific arguments. First, she compares the statutory scheme for unemployment disability benefits with that of worker's compensation, one which generally has been held to provide an exclusive remedy. The employer or insurance company which wrongfully denies worker's compensation benefits to an employee is penalized under the Labor Code. (E.g., Lab. Code, § 5814 provides a 10 percent penalty for an unreasonable delay or refusal to pay benefits; Lab. Code, § 5814.5 provides for attorney's fees to a claimant who has been unreasonably delayed from receiving benefits.) Since no similar statutory remedies exist in the Unemployment Insurance Code for improper or unfair claims practices by

employers or voluntary plan insurers, Lee urges us to hold the scheme nonexclusive. We decline to do so. The Legislature established a variety of safeguards to insure the proper and fair operation of voluntary plans, including, as we have observed, the duty of the Director of Employment Development to terminate plans (§ 3262) under certain circumstances. Again, it is for the Legislature, not this court, to determine that those mechanisms are inadequate to regulate the conduct about which Lee complains.

Second, Lee claims that her causes of action are "not necessarily predicated upon the denial of her claim by petitioners. Rather, [she] seeks remedies for the wrongful and unfair manner in which her disability claim was processed," including petitioners' failure properly to investigate her claim. Thus, she says, section 3264 is simply inapplicable to her. Clearly the essence of Lee's complaint is the denial of benefits to her. She may not avoid the exclusivity provisions of section 3264 by characterizing the denial as distinct from the process which led to it.

Finally, Lee contends here as she did below that if this court finds the statutory scheme to be an exclusive one, it should judicially create an exception to allow the claims here. She relies on *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063] for this argument. In *Unruh,* the California Supreme Court held that the particular conduct pleaded in that plaintiff's complaint stated facts sufficient to constitute a cause of action against the insurer because the facts stated were such that the insurer was alleged to be a "person other than the employer" within the meaning of Labor Code section 3852. That section expressly allowed a right of action by the employee for damages. By contrast, nothing in the Act provides for such a right of action. Moreover, the facts pleaded below by Lee bear no resemblance to the allegations in *Unruh,* in which it was alleged that the insurer embarked on an intricate, fraudulent, and deceitful course of conduct.[6] And, appellate courts have declined to extend *Unruh* to the insurance bad faith context. (See *Soto* v. *Royal Globe Ins. Corp.* (1986) 184 Cal.App.3d 420 [229 Cal.Rptr. 192]—wilful failure by carrier to pay benefits does not provide an exception to the exclusive remedies of the workers' compensation scheme—and cases cited therein.)

We conclude that, in light of section 3264, the motion for judgment on the pleadings should have been granted.

---

[6]In *Unruh, supra,* the claimant was placed under surveillance by the insurer. One of the insurer's agents befriended her, misrepresenting who he was, took her to Disneyland, and enticed her to engage in activities on a visit to Disneyland which were beyond her physical capacity and which injured her. What is more, the insurer's agent caused her to become emotionally interested in him. Eventually, when she learned of the ruse and deception, she had a physical and mental breakdown requiring hospitalization.

*Title VII Cause of Action*

Since our holding necessarily resolves the matter of Lee's Title VII cause of action, we need not determine whether such a claim may be prosecuted in state court.[7]

Let a peremptory writ of mandate issue commanding respondent to set aside its order denying petitioners' motions for judgments on the pleadings and, instead, to make a new order granting said motions, and enter judgments accordingly.

Racanelli, P. J., and Newsom, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 17, 1987.

---

[7]We note that the United States Supreme Court has expressly left the question open (*Kremer* v. *Chemical Construction Corp.* (1982) 456 U.S. 461, 479 fn. 20 [72 L.Ed.2d 262, 278-279, 102 S.Ct. 1883]). The Ninth Circuit, however, has addressed the issue holding Title VII jurisdiction to be exclusively federal (*Valenzuela* v. *Kraft, Inc.* (9th Cir. 1984) 739 F.2d 434; *Dyer* v. *Greif Bros., Inc.,* (9th Cir. 1985) 755 F.2d 1391; *Trujillo* v. *County of Santa Clara* (9th Cir. 1985) 775 F.2d 1359); the Third District Court of Appeal has agreed with its analysis. (*Retired Public Employees' Assn.* v. *Board of Administration* (1986) 184 Cal.App.3d 378, 384 [229 Cal.Rptr. 69].) But these cases do not mention that our California high court has accepted jurisdiction over Title VII issues. (See e.g., *Hardy* v. *Stumpf* (1978) 21 Cal.3d 1 [145 Cal.Rptr. 176, 576 P.2d 1342]; *Price* v. *Civil Service Com.* (1980) 26 Cal.3d 257 [161 Cal.Rptr. 475, 604 P.2d 1365].)