Opinion
 

 BAMATTRE-MANOUKIAN, J.
 

 Noreen Martin, a long-term employee of Lockheed Missiles & Space Company, Inc., was laid off at age 65. She sued Lockheed, alleging sex and age discrimination under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) and the cognate provision of the California Constitution (Cal. Const., art. I, § 8). Lockheed’s motion for summary judgment was granted; Martin appeals from the ensuing judgment. We shall conclude that Lockheed sufficiently established a legitimate business purpose for its personnel decision which ultimately led to termination of Martin’s employment, and that Martin’s theories of recovery other than age discrimination were vitiated by her failure to exhaust administrative remedies under California law. Accordingly we shall affirm the judgment.
 

 Strictly speaking, Martin’s action, as pled, was for age discrimination, sex discrimination, sexual harassment, and retaliation for failure to grant sexual favors, all alleged to have occurred over a considerable period of time prior to, and ultimately culminating in, termination of her employment. It is
 
 *1724
 
 uncontradicted, however, that Martin never complained of any of these things until after she was laid off, that both parties have proceeded upon the assumption that the wrong for which Martin seeks compensation is the termination of her employment, and thus that this is, in essence, an action for wrongful termination.
 

 Martin was employed by Lockheed, in Santa Clara County, from 1966 to 1979. She then left Lockheed, in good standing, to move with her husband to another part of the state. In 1984, when she was 58 years old, Lockheed rehired her, with seniority from 1966, and she worked for Lockheed until, in 1991, Lockheed made her “available for reassignment” from her position. In Lockheed’s vernacular “available for reassignment” meant that Martin would be removed from her position, that she was free to seek another position at Lockheed to which to be “reassigned,” but that if she could not find such a position her employment at Lockheed would end. Martin was unable to find another position at Lockheed and was laid off.
 

 Exhaustion of Administrative Remedies
 

 Under California law “an employee must exhaust the . . . administrative remedy” provided by the Fair Employment and Housing Act, by filing an administrative complaint with the California Department of Fair Employment and Housing (DFEH) (Gov. Code, § 12960; cf.
 
 id.,
 
 §§ 12901, 12925, subd. (b)) and obtaining the DFEH’s notice of right to sue
 
 (id.,
 
 § 12965, subd. (b)), “before bringing suit on a cause of action under the act or seeking the relief provided therein . . . .”
 
 (Rojo
 
 v.
 
 Kliger
 
 (1990) 52 Cal.3d 65, 88 [276 Cal.Rptr. 130, 801 P.2d 373] [dictum]; cf.
 
 Commodore Home Systems, Inc.
 
 v.
 
 Superior Court
 
 (1982) 32 Cal.3d 211, 213-214 [185 Cal.Rptr. 270, 649 P.2d 912];
 
 Denney
 
 v.
 
 Universal City Studios, Inc.
 
 (1992) 10 Cal.App.4th 1226, 1232 [13 Cal.Rptr.2d 170];
 
 Yurick
 
 v.
 
 Superior Court
 
 (1989) 209 Cal.App.3d 1116, 1121 [257 Cal.Rptr. 665];
 
 Miller
 
 v.
 
 United Airlines, Inc.
 
 (1985) 174 Cal.App.3d 878, 890 [220 Cal.Rptr. 684].) To exhaust his or her administrative remedies as to a particular act made unlawful by the Fair Employment and Housing Act, the claimant must specify that act in the administrative complaint, even if the complaint does specify other cognizable wrongful acts.
 
 (Yurick
 
 v.
 
 Superior Court, supra,
 
 209 Cal.App.3d at pp. 1121-1123.) We have recognized, in the context of the Fair Employment and Housing Act, that “[t]he failure to exhaust an administrative remedy is a jurisdictional, not a procedural, defect,” and thus that failure to exhaust administrative remedies is a ground for a defense summary judgment.
 
 (Miller
 
 v.
 
 United Airlines, Inc., supra,
 
 174 Cal.App.3d at p. 890.)
 

 In April 1991 Martin filed an administrative charge of age discrimination against Lockheed with the federal Equal Employment Opportunity Commission (EEOC). It appears that the EEOC then referred the charge to the
 
 *1725
 
 DFEH, which (also in April 1991) notified Martin that the EEOC “will be responsible for the processing of this complaint,” that “[t]hat agency should be contacted directly for any discussion of resolution of the charge,” and that the DFEH would close its case “on the basis of ‘processing waived to another agency.’ ” In the same document the DFEH gave Martin notice of the right to file a private lawsuit in a California court.
 

 In February 1992 Martin undertook to amend her administrative charge to add theories of sexual discrimination, harassment and retaliation. She filed her amended charge with the federal EEOC on February 26, 1992; in her briefing she appears to acknowledge that she did not separately file the amended charge with the California DFEH. On February 28, 1992, the EEOC issued a notice of right to sue to Martin. It is neither shown nor asserted that DFEH took any further action in this matter after April 1991.
 

 Martin filed this California superior court action in April 1992. She affirmatively alleged that she sought to “state claims under the State of California’s antidiscrimination statutes contained in California Government Code Sections 12940, 12941 [both substantive provisions of the Fair Employment and Housing Act], and Article I, Section 8 of the California Constitution.”
 

 Upon these essentially undisputed facts Lockheed took the position, in partial support of its motion for summary judgment, that Martin had failed to exhaust her California administrative remedies, and therefore could not maintain her action under the California antidiscrimination statutes, as to any theory of recovery other than the age-discrimination claim embodied in her initial claim and for which the DFEH had issued a right-to-sue notice. The trial court agreed, granting summary judgment on that ground “as to any claims for sexual harassment, retaliation, or sex discrimination that may be found in the complaint.”
 

 On appeal, Martin asserts that the trial court’s conclusion was erroneous. She argues (1) that state courts have concurrent jurisdiction over discrimination claims based on EEOC right-to-sue notices, (2) that because the DFEH
 
 “refused
 
 to take any action” on the February 26, 1992, amended charge Martin could bring a state court action even without a right-to-sue notice, (3) that to require that Martin have obtained a new right-to-sue notice from the DFEH in addition to the EEOC’s right-to-sue notice would be to create an inappropriate “additional procedural technicality,” and (4) that because the DFEH had informed Martin that the EEOC would be handling the case, and had referred inquiries concerning the case to the EEOC, Martin had done everything that was required of her when she filed her amended charge with the EEOC.
 

 
 *1726
 
 Martin does not assert that her theories of recovery, other than age discrimination, might embody viable claims under the common law not subject to the requirement of exhaustion of remedies. (Cf.
 
 Rojo
 
 v.
 
 Kliger, supra,
 
 52 Cal.3d at p. 88.)
 

 1.
 
 Concurrent Jurisdiction
 

 Martin asserts that title VII of the federal Civil Rights Act of 1964 as amended gives state courts concurrent jurisdiction over civil actions for employment discrimination based on notices of right to sue issued by the federal EEOC. From this premise Martin argues that the EEOC’s February 1992 right-to-sue notice was sufficient evidence, for purposes of this action based on the California Fair Employment and Housing Act, that Martin had exhausted her administrative remedies.
 

 It is by no means clear that California courts have concurrent jurisdiction even over title VII actions. (Cf., e.g.,
 
 Ibarbia
 
 v.
 
 Regents of University of California
 
 (1987) 191 Cal.App.3d 1318, 1321, fn. 1 [237 Cal.Rptr. 92];
 
 Safeway Stores, Inc.
 
 v.
 
 Superior Court
 
 (1987) 190 Cal.App.3d 713, 720, fn. 7 [235 Cal.Rptr. 636]; cf. generally 2 Larson, Employment Discrimination (1994) § 49.15(b), pp. 9B-68-9B-71;
 
 id.
 
 (July 1994 cum. supp.) at pp. 172-174.) In any event we agree with Lockheed that on its face, and under the federal statute it implements (42 U.S.C. § 2000e-5(f)(l)), an EEOC right-to-sue notice satisfies the requirement of exhaustion of administrative remedies
 
 only
 
 for purposes of an action based on title VII. Inasmuch as Martin elected to base her action not on title VII, but on the Fair Employment and Housing Act, the EEOC right-to-sue notice technically did not satisfy the jurisdictional requirement that Martin have exhausted her administrative remedies as to the asserted violations of the California statute. (Cf.
 
 Yurick
 
 v.
 
 Superior Court, supra,
 
 209 Cal.App.3d at pp. 1121-1123.)
 

 2.
 
 DFEH Inaction
 

 The Fair Employment and Housing Act provides that “[i]f an accusation is not issued [by the DFEH] within 150 days after the filing of a complaint, or if the department earlier determines that no accusation will issue, the [DFEH] shall promptly notify, in writing, the person claiming to be aggrieved. Such notice shall indicate that the person . . . may bring a civil action under this part. . . .” (Gov. Code, § 12965, subd. (b); cf.
 
 Ewing
 
 v.
 
 Gill Industries, Inc.
 
 (1992) 3 Cal.App.4th 601, 616 [4 Cal.Rptr.2d 640].) Because it is undisputed that the DFEH took no action at all on Martin’s February 1992 amended charge, Martin argues, she was entitled to bring this action without a right-to-sue notice from the DFEH.
 

 
 *1727
 
 The short answer is that, on the face of the statute, the DFEH’s duty to act is triggered by “the filing of a complaint,” which plainly means the verified complaint in writing which, under Government Code section 12960, an aggrieved person is entitled to “file
 
 with the department
 
 . . . .” (Italics added.) In the trial court Martin referred to “a dual filing agreement between” the EEOC and the DFEH, apparently intending to imply that a filing with the EEOC should be deemed a filing with the DFEH, but Martin has not renewed the assertion in this court and our own research gives no substance to the implication. Absent any showing that Martin filed her amended charge, or caused it to be filed, with the DFEH, or that the DFEH had actual notice of the amended charge from any other source, there is no basis for an assertion that Martin could predicate her lawsuit on the DFEH’s inaction (in lieu of better evidence that she had exhausted her administrative remedies).
 

 3.
 
 Procedural Technicality
 

 In
 
 Love
 
 v.
 
 Pullman Co.
 
 (1972) 404 U.S. 522 [30 L.Ed.2d 679, 92 S.Ct. 616], a person claiming to be aggrieved by racial discrimination in employment complained to the EEOC. The EEOC, operating under title VH’s requirement that where there is a local agency authorized to grant or seek relief against employment discrimination “ ‘no charge may be filed [with the EEOC]’ ” less than 60 days after state proceedings have been commenced, did not file the complaint but instead orally advised a state civil rights commission that it had received the complaint.
 
 (Id.
 
 at p. 525 [30 L.Ed.2d at pp. 683-684].) The state commission (which had previously considered the claimant’s grievance in separate proceedings that apparently were not pertinent to the procedural requirements of title VII) declined to take further action. It may be inferred that the EEOC then caused the claimant’s complaint to be filed without further action by the claimant. The EEOC then pursued its own investigation, concluded there was probable cause to believe there had been discrimination, but was unable to obtain the employer’s voluntary compliance with title VII. The claimant then brought a federal civil action which was dismissed; a Court of Appeals affirmed the dismissal on the basis that the complaint had not been properly “filed” with the EEOC as a prerequisite to suit. The United States Supreme Court reversed the judgment of the Court of Appeals, concluding that “the filing procedure followed here fully complied with the intent of [Title VII]” (404 U.S. at p. 525 [30 L.Ed.2d at pp. 683-684]) and saying (among other things) that “[t]o require a second ‘filing’ by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality. Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.”
 
 (Id.
 
 at pp. 526-527 [30 L.Ed.2d at pp. 684-685], fn. omitted.)
 

 
 *1728
 
 Martin argues that this last statement is germane to Lockheed’s assertion that, to exhaust her state administrative remedies, she should have filed her February 1992 amended charge with the DFEH. Martin asserts that in
 
 Love
 
 the United States Supreme Court “rejected the kind of ‘procedural hoops’ that Lockheed suggests that [Martin] must go through.”
 

 We cannot agree with Martin that either the holding or the reasoning of
 
 Love
 
 should control the disposition of this case.
 
 Love
 
 cannot be read as more than a rational and just construction of the provisions of title VII, which (by virtue of Martin’s own election of procedural theories) is wholly inapplicable to this case. The cases are also factually distinguishable: In
 
 Love
 
 the EEOC received notice of the claimant’s grievance when it received (but for procedural reasons did not immediately file) his complaint; to require the claimant affirmatively to resubmit the complaint would have added nothing to the EEOC’s ability to implement the purposes of title VII in the claimant’s case. Here, in contrast, so far as the record shows the DFEH never did learn of Martin’s assertion that, in addition to the age discrimination of which she originally complained, she had been a victim of sexual harassment, retaliation, and sexual discrimination. Thus, so far as the record shows the DFEH never received the opportunity, with respect to these additional theories of violation of the Fair Employment and Housing Act, to pursue the “vital policy interests embodied in [the Act], i.e., the resolution of disputes and elimination of unlawful employment practices by conciliation. [Citations.]”
 
 (Yurick
 
 v.
 
 Superior Court, supra,
 
 209 Cal.App.3d at p. 1123.) The procedural requirement that Martin formally make each of her theories of violation known to the DFEH was thus by no means “an additional procedural technicality” in this case.
 

 4.
 
 Delegation to the EEOC
 

 We understand Martin’s position to be that because, in April 1991, the DFEH advised Martin that the EEOC “will be responsible for the processing of’ her complaint, that the EEOC “should be contacted directly for any discussion of resolution of the charge,” and that the DFEH would close its case, Martin was required to do no more (to exhaust her remedies under the state statute) than to file a written statement of her additional theories of violation with the EEOC.
 

 We find Martin’s position unacceptable because, in the circumstances of this case, the position would not serve the vital policy interests, implemented by the Fair Employment and Housing Act, to which we have referred.
 

 We accept the premise that a state agency such as the DFEH may, in an appropriate case, reverse the federal statutory preference for deferral by the
 
 *1729
 
 EEOC to a suitably qualified and empowered state agency (cf. 42 U.S.C. §.2000e-5(c);
 
 Love
 
 v.
 
 Pullman Co., supra,
 
 404 U.S. at p. 526 [30 L.Ed.2d at p. 526]) by itself deferring to the EEOC to permit the EEOC to process a claim over which either the federal or the state agency would have jurisdiction. But for such a case to be appropriate, in proceedings initiated before the DFEH, the DFEH (to serve the legislative purpose of the Fair Employment and Housing Act procedure) must be able to assure itself that the deferral will not jeopardize the goal of “resolution of disputes and elimination of unlawful employment practices by conciliation. [Citations.]”
 
 (Yurick
 
 v.
 
 Superior Court, supra,
 
 209 Cal.App.3d at p. 1123.)
 

 Because a DFEH deferral to the EEOC amounts in necessary effect to a decision that the DFEH will not itself immediately pursue conciliation, the deferral should be based on a preliminary determination by the DFEH that (for whatever reason) it cannot effectively seek conciliation in the particular case, and by the same token the DFEH should simultaneously notify the claimant of the claimant’s right to bring his or her own civil suit in a California court.
 

 This appears to be what occurred, in April 1991, in this case. Having received notice of Martin’s initial claim for age discrimination, the DFEH deferred to the EEOC and simultaneously notified Martin that “[s]ince the [DFEH] will not be issuing an accusation, this notice is also being provided to the complainant as notification of the right to file a private law suit in a California . . . Court.” Whether the DFEH’s decision was based on a determination, for purposes of a “worksharing agreement” between the DFEH and the EEOC of the kind referred to in Martin’s briefs and described in (for example)
 
 EEOC
 
 v.
 
 Commercial Office Products Co.
 
 (1988) 486 U.S. 107, 112 [100 L.Ed.2d 96, 104-105, 108 S.Ct. 1666], that the DFEH simply lacked the time or resources to undertake Martin’s case, or on a determination that conciliation would be unlikely in Martin’s case, the decision necessarily would involve at least preliminary evaluation of Martin’s claim.
 

 But the only claim before the DFEH in April 1991 was that Martin had been a victim of age discrimination. We cannot know how the DFEH would have reacted to the additional claims Martin made nearly a year later, because so far as we are aware those additional claims never reached the DFEH. If the procedural purposes of the Fair Employment and Housing Act (and, for that matter, the title VII policy of initial deferral to a qualified state agency) are to be served, we cannot treat the DFEH’s decision to defer an age discrimination claim as an effective delegation to the EEOC for the purpose of any further claim the aggrieved person may later make. If Martin wished to avail herself of state judicial remedies for her additional claims, it
 
 *1730
 
 was essential that she undertake by reasonable means to make the additional claims known to the DFEH. In our view she did not do so, and therefore she did not exhaust her state administrative remedies.
 

 Age Discrimination
 

 Martin did file her age discrimination claim with the DFEH, and received the DFEH’s right-to-sue notice. She had exhausted her administrative remedies with respect to her theory that Lockheed had violated the age discrimination provisions of the Fair Employment and Housing Act. But in granting Lockheed’s motion for summary judgment the trial court implicitly concluded that Lockheed had shown, without triable issue of fact material to its showing, that it was entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Martin challenges the trial court’s conclusion. The issues Martin thus raises involve pure matters of law, which we review independently.
 
 {Parsons Manufacturing Corp.
 
 v.
 
 Superior Court
 
 (1984) 156 Cal.App.3d 1151, 1156 [203 Cal.Rptr. 419];
 
 AARTS Productions, Inc.
 
 v.
 
 Crocker National Bank
 
 (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].)
 

 Had Martin reached trial with her age discrimination claim, she would of course have borne the initial burden of proving unlawful discrimination, under well-settled rules of order of proof: “[T]he employee must first establish a prima facie [showing] of wrongful discrimination. If she does so, the burden shifts to the employer to show a lawful reason for its action. Then the employee has the burden of proving the proffered justification is mere pretext.”
 
 {Gonzales
 
 v.
 
 MetPath, Inc.
 
 (1989) 214 Cal.App.3d 422, 426 [262 Cal.Rptr. 654]; cf.
 
 St. Mary’s Honor Center
 
 v.
 
 Hicks
 
 (1993) 509 U.S. _, _ [125 L.Ed.2d 407, 415-419, 113 S.Ct. 2742];
 
 Texas Dept, of Community Affairs
 
 v.
 
 Burdine
 
 (1981) 450 U.S. 248 [67 L.Ed.2d 207, 101 S.Ct. 1089];
 
 Teamsters
 
 v.
 
 United States
 
 (1977) 431 U.S. 324, 358 [52 L.Ed.2d 396, 429, 97 S.Ct. 1843];
 
 McDonnell Douglas Corp.
 
 v.
 
 Green
 
 (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817];
 
 Ewing
 
 v.
 
 Gill Industries, Inc., supra,
 
 3 Cal.App.4th at pp. 610-611;
 
 Levy
 
 v.
 
 Regents of University of California
 
 (1988) 199 Cal.App.3d 1334, 1343-1344 [245 Cal.Rptr. 576].)
 

 But these rules of trial procedure have no direct application to a defendant’s motion for summary judgment. A defendant seeking summary judgment must bear the initial burden of showing that “the action has no merit” (Code Civ. Proc., § 437c, subd. (a) & former subd. (n)(2) [now subd. (o)(2)], and the plaintiff will not be required to respond unless and until the defendant has borne that burden.
 
 {Parsons Manufacturing Corp.
 
 v.
 
 Superior Court, supra,
 
 156 Cal.App.3d 1151, 1157; Code Civ. Proc., § 437c, former
 
 *1731
 
 subd. (n)(2) [now subd. (o)(2)].) In this sense, upon a defendant’s summary judgment motion in an employment discrimination action “the burden is reversed . . . .”
 
 (University of Southern California
 
 v.
 
 Superior Court
 
 (1990) 222 Cal.App.3d 1028, 1036 [272 Cal.Rptr. 264].)
 

 In this court as in the trial court, Lockheed suggests that Martin cannot make so much as a prima facie showing of age discrimination. But for purposes of summary judgment Lockheed’s better argument is that it has made a sufficient showing that its decision to make Martin “available for reassignment” was the result of a nondiscriminatory reduction in force dictated by adverse economic conditions and that Martin’s inability to find a new position was not attributable to any wrongful act by a Lockheed employee, and that Martin has not raised a triable issue of fact material to this showing.
 

 Lockheed showed that due to cutbacks in government contract spending it had needed to reduce the size of its active workforce “drastically” after the end of 1986. In February 1991 one Edinger became the manager of a Lockheed department, supervising six positions including two for manufacturing material cost schedule control system criteria (C/SCSC) specialists. At that time the two C/SCSC specialist positions were occupied by Martin and a younger woman, with less company seniority, named Starling.
 

 Edinger declared that, also in February 1991, he was told by his supervisor that he would be required to eliminate two of the six positions he supervised. Edinger analyzed the positions and determined among other things that “there was not enough ‘manufacturing material’ C/SCSC work available for two persons.....[I]n my judgment, neither Martin nor Starling were fully occupied in those assignments, so I decided one of them should be displaced.”
 

 Lockheed showed that at relevant times it has maintained a detailed written procedure, titled “Layoff and Plant Closing-Salaried Employees,” for the kind of reduction in force Edinger had been instructed to make. The procedure required consideration of potentially affected employees’ annual performance ratings (called salaried performance appraisals or SPAs) and preparation of a specially weighted SPA, giving “positive credit to more senior employees,” for each such employee. “Thus, if one person is to be let go, the employees will be ranked based on performance and seniority. The employee with the lowest weighted score is made [available for reassignment].”
 

 Lockheed submitted, subject to protective order, documentary evidence from which it appears that this weighted evaluation procedure was followed
 
 *1732
 
 in Edinger’s department and that even after Martin’s greater seniority was taken into account Martin’s weighted score was substantially lower than Starling’s. On this basis, according to Lockheed’s showing, Martin was made available for reassignment. Lockheed categorically denied that Martin’s age had any bearing whatsoever on its decision.
 

 Martin unsuccessfully applied for other positions at Lockheed. Several Lockheed employees declared that they had undertaken to help Martin find such a position; all denied that Lockheed had taken any action to prevent Martin from being reassigned.
 

 On its face Lockheed’s carefully documented showing was sufficient to make a prima facie case for defense summary judgment as to Martin’s age discrimination claim. It is clear that in the circumstances of a particular case (cf.
 
 Harlan
 
 v.
 
 Sohio Petroleum Co.
 
 (N.D.Cal. 1988) 677 F.Supp. 1021, 1030) ‘the depressed condition of [the employer’s] . . . business and its business decision to reduce its staff with the result that [the employee’s] services [are] no longer needed” can be good cause for discharging the employee
 
 (Malmstrom
 
 v.
 
 Kaiser Aluminum & Chemical Corp.
 
 (1986) 187 Cal.App.3d 299, 321 [231 Cal.Rptr. 820]; cf.
 
 Clutterham
 
 v.
 
 Coachmen Industries, Inc.
 
 (1985) 169 Cal.App.3d 1223, 1227 [215 Cal.Rptr. 795]), and can also support an inference of good faith, and of the absence of an improper motive, in the discharge decision. And Lockheed’s showing demonstrated, without internal inconsistency, that Lockheed had implemented the reduction in force which led to Martin’s layoff in a rational and methodical manner.
 

 Thus it became necessary for Martin to demonstrate either (by additional facts or legal argument) that the defendant’s showing was in fact insufficient or (by competent evidentiary materials) that there was a triable issue of fact material to the defendant’s showing. (Cf. generally
 
 Parsons Manufacturing Corp.
 
 v.
 
 Superior Court, supra,
 
 156 Cal.App.3d at p. 1157;
 
 AARTS Productions, Inc.
 
 v.
 
 Crocker National Bank, supra,
 
 179 Cal.App.3d at pp. 1064-1065; Code Civ. Proc., § 437c, & former subd. (n)(2) [now subd. (o)(2].) To bear her burden in the circumstances of this case, Martin would have been required to raise an inference of age discrimination at least sufficient to create a triable issue of fact material to the defendant’s assertion that their decision to discharge Martin had been legitimate. (Cf.
 
 Levy
 
 v.
 
 Regents of University of California, supra,
 
 199 Cal.App.3d at p. 1343.)
 

 For these purposes Martin undertook to show that she could prove the elements of a prima facie case of age discrimination and, in particular, that her job performance at Lockheed had been satisfactory and had indeed been
 
 *1733
 
 praised and that over a period of years Lockheed employees had made general statements, and occasional remarks to her, from which a bias against older employees could be inferred.
 

 Lockheed apparently would not dispute Martin’s assertion that she had been a good and highly valued employee for a number of years. But to counteract Lockheed’s detailed showing of the reduction-in-force procedure it followed in her case Martin clearly was required to show more: sadly, economically dictated reductions in force can and often do victimize highly qualified and hard-working people, but the question germane to such a person’s claim for wrongful discharge is, simply, whether the procedure by which he or she was laid off was validly and fairly devised and administered to serve a legitimate business purpose. Here, under Lockheed’s own facially valid and fair procedures, the question was not whether Martin was good at the job she did but whether Lockheed rationally and fairly arrived at a conclusion that Starling was better. Martin asserts that Starling was in fact less well qualified, that Lockheed lacked data sufficient to assess Starling’s work in comparison to Martin’s, and that Edinger lacked both time in his position and qualifications to make the comparison, but each of these assertions proves on analysis to be based on Martin’s opinions rather than on evidence. Martin also relies on her uncontroverted statement that shortly before Edinger became her supervisor she was asked, in essence, whether
 
 she
 
 could do both her own job and Starling’s, and that Martin replied she could. The pertinence of this statement is not clear; inferably, in the course of the evaluation process Starling would have been asked the same question and would have given the same answer.
 

 The primary thrust of Martin’s showing in opposition to summary judgment appears to have been to show that Lockheed had a long-standing policy or practice of discrimination against older employees and that this policy or practice had manifested itself, over a period of years, in occasional remarks by other employees to Martin herself.
 

 For this purpose Martin tendered a copy of a memorandum, apparently written in 1988 by a Lockheed employee named Araki and headed “Critical Skills Retention,” in which Araki wrote, among other things, that “Last year we addressed the potential out-flow of our technical skills capability with two programs; i.e., a separate fund for retention pay increases to neutralize offers from other companies and a fund that permitted
 
 preferred treatment for young people with specific critical skills.
 
 We must now focus attention on the work and career related reasons contributing to terminations.” (Italics added.) Martin cites the emphasized portion of this quotation as evidence of a Lockheed “policy to prefer younger employees over older employees like [Martin].”
 

 
 *1734
 
 Martin also asked the trial court to take judicial notice of a declaration (filed in a different lawsuit against Lockheed) by an individual named Milton, who had been a Lockheed employee until 1988, in which Milton stated that another Lockheed manager named Montague, in the spring of 1986, had written a memorandum “for management’s eyes only” in which Montague “stated in essence, that from now on, 1) managers were not to give salary increases to anyone over the age of sixty years; and 2) that no management position should be given to anyone over forty years of age.”
 

 To these indicia of what Martin characterized as “Lockheed’s age discrimination policy” Martin added her own recollections that in 1975 her supervisor had told her that since she was over 40 she could not take leadership training, that in 1987 another supervisor told her that she was “really ‘well preserved’ for someone my age, that I had a ‘beautiful bod’ ” (from which she received “[t]he idea. . . that he was telling me ‘you’re old, but you look pretty good’ ”) and that there were other incidents of direct or indirect reference to her age over a period of years.
 

 Martin also submitted unauthenticated statistics to indicate an increase in “terminations” (undifferentiated as between retirements, resignations, terminations for cause, and ostensible reductions in force) of Lockheed employees over 40 relative to all terminating employees, and asserted that there have been a substantial number of age discrimination claims lodged against Lockheed since 1988.
 

 Martin also sought to challenge the validity and fairness of Lockheed’s reduction-in-force procedures by submitting the declaration of one Sondhi, a Lockheed employee until 1990, who stated that he had been involved in “stacking and ranking” subordinate employees and had participated in meetings for that purpose, and that “[i]t was my observation that the decision making was not based on an individual’s job performance. It was based on who that person was and whether they were ‘liked’ by a particular supervisor or not. The ranking lists were then used as a guideline in preparing the Salaried Appraisal Reviews of the employees by the supervisors and the managers. [SI] . . . It is my experience that the rankings were first reviewed and approved before the appraisals were rated and finalized to fit the ranking.”
 

 Whether or not a trier of fact would find any of this to be persuasive evidence on issues to which it was germane, it is apparent that none of it is material to the issue which was before the trial court and thus is before us, which is whether Martin had raised a triable issue of fact material to Lockheed’s showing that
 
 on a specific occasion in early 1991
 
 Martin was
 
 *1735
 
 found available for reassignment by means of valid and fair procedures validly and fairly applied without regard to her age. Martin’s repeated assertions, in the trial court, that particular factual points amounted to “the whole issue for the jury to decide” or were “the ‘nut’ of the case” were insufficient in and of themselves to forestall summary judgment. The purpose of the summary judgment procedure, as we perceive it, is to identify those cases in which there is no factual issue which warrants the time and cost of factfinding by trial. Obviously the procedure cannot fairly serve its purpose unless and until all parties have had sufficient opportunity, through discovery and otherwise, adequately to develop their factual cases. But where, as here, the parties have received (and apparently have utilized) that opportunity, we believe the correct rule to be that to meet an employer’s sufficient showing of a legitimate reason for discharge the discharged employee, to avert summary judgment, must produce “substantial responsive evidence” that the employer’s showing was untrue or pretextual.
 
 (University of Southern California
 
 v.
 
 Superior Court, supra,
 
 222 Cal.App.3d at p. 1039.) For this purpose, speculation cannot be regarded as substantial responsive evidence. (Cf.
 
 Burton
 
 v.
 
 Security Pacific Nat. Bank
 
 (1988) 197 Cal.App.3d 972, 978 [243 Cal.Rptr. 277].) In our view Martin’s showing in the trial court was insufficient to create more than speculation that Lockheed’s showing was pretextual or false.
 

 The judgment is affirmed. Lockheed Missiles & Space Company, Inc., shall recover its costs on appeal.
 

 Cottle, P. J., and Elia, J., concurred.