Filed 4/15/14  Wile v. Johnson Window Films CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SHELLY WILE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JOHNSON WINDOW FILMS,<br><br>Defendant and Respondent. | B247056<br><br>(Los Angeles County<br>Super. Ct. No. BC472146) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Reversed.

Law Offices of Tamara S. Freeze, Tamara S. Freeze, Robert Odell and Allison Lin for Plaintiff and Appellant.

Blank Rome, Howard M. Knee and Kathy PourSanae for Defendant and Respondent.

_____

Shelly Wile, a former employee of Johnson Window Films, appeals from the judgment entered after the trial court granted summary judgment in favor of the company on Wile's claims for wrongful termination and related employment claims. We affirm most of the trial court's rulings. However, we reverse as to Wile's cause of action for failure to engage in the interactive process to determine a reasonable disability accommodation because the company failed to establish Wile had not timely filed an administrative complaint with the Department of Fair Employment and Housing (DFEH)—the only ground advanced with respect to that claim.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Wile's Employment at Johnson Window Films*

In March 1999 Scott Davidson, the president of Johnson Window Films, hired Wile, then 71 years old, as a sales representative. Wile's responsibilities included making and receiving telephone calls, sending product information letters, educating sales prospects about the company's products, policies and procedures, processing customer transactions and finding prospective customers. He earned a base salary of $1,000 per month and a 2.5 percent commission on net sales in his assigned territory. Between 2000 and April 2003 Wile received employee evaluations rating his performance as good in many respects, but needing improvement in some. In January 2003 Wile's base salary was increased to $1,100 per month and his commission reduced to 2 percent, but his sales territory was expanded.

In early 2004 Wile tore the meniscus in his left knee, requiring surgery. He took a disability leave from February 16, 2004 through March 17, 2004. In September 2004 issues with Wile's performance arose. On September 27, 2004 a potential customer complained about Wile in an email: "I called over a week ago, asking for some film samples. . . . To this day, I don't have the film. I Emailed again asking where is my sample. The sales person calls and asked . . . . What kind of film?" Wile was given an oral warning and told to "write down contact information correctly and to create a system where he will not forget to follow up on his notes." On September 2, 2005 David Read,

2

Wile's supervisor, warned Wile about viewing adult web sites on his computer and reminded him it was a ground for termination.

On March 30, 2006 Davidson spoke to Wile about continued problems with his performance. In a note memorializing the conversation Davidson wrote, "Today [Wile] and I discussed the many mistakes he has been making. These mistakes range from messed up credit card entry, mistakes on order entry and orders simply not entered. We discussed how and why they are happening and how many (several per day) are occurring. We discussed (and [Wile] acknowledged) the several time[s] that Dave Read has discussed this with him."

In June 2006 Davidson limited Wiles duties to making outbound calls to prospective customers, creating a position for Wile that had not existed at the company. Davidson explained he had considered terminating Wile but decided not to "because of his wife's medical problems. I empathized greatly with [Wile's] situation and greatly respected [Wile's] devotion to his wife. I was also hesitant to let [Wile] go because my daughter and [Wile's] grandson went to school together at the time." Because he was no longer responsible for making sales, Wile's salary was changed from a commission structure to $35 per hour. Although Wile disputes his responsibilities changed in 2006, he acknowledged at his deposition his responsibilities had been reduced on approximately June 1, 2006 to "simply" making cold calls to people he found in the nationwide telephone directory yellow pages, a change he considered a demotion.

In August 2007 Wile had a second knee surgery and took a medical leave from August 16, 2007 through September 10, 2007. When he returned from leave, the company had moved his desk from the second floor to the first floor so Wile, who now used a cane, did not have to climb stairs. In September 2008 Wile began working from home to accommodate his impaired knee; it was easier if he did not have to commute to work or walk far to use the bathroom or go to lunch. Wile testified he first asked to work from home because of his knee—and so he could be available if his wife needed him— before his responsibilities changed in June 2006. He made the request three to five additional times before it was granted.

According to Davidson, in September 2009 Johnson Window Films began laying off "lower productive employees" because it had been incurring net losses: approximately $79,900 in 2007, $427,840 in 2008 and $427,950 in 2009.[1] The laid-off sales representatives and sales managers were replaced, but some of the new employees were subsequently terminated for failure to increase sales. After 2010's net loss of $327,000 and continuing losses in 2011, Davidson decided to discharge an additional employee. Johnson selected Wile, who was terminated on June 15, 2011, "because (a) Johnson did not need someone conducting only outbound sales cold calls from the yellow pages, because the prospecting calls were not producing a sufficient number of sales; and (b) Mr. Wile's performance issues which gave rise to limiting his job duties in June 2006." Davidson testified he never questioned Wile's effort. The problem was he generated only a few customers who purchased small amounts and did not become repeat customers: "It just came to be that these leads were not ever adding up to complete customers that would buy again and again and add to your sales month after month." Davidson did not discuss this issue with Wile in 2009 or 2010 because the company "was just carrying him. I was just giving him a paycheck because of his wife, and I think everybody in the company had that compassion for him." No one was hired solely to make cold calls from the yellow pages after Wile was fired; other sales associates continued to make cold calls as part of their job responsibilities.

2. *The Complaint*

After submitting an administrative complaint on October 11, 2011 to the DFEH and receiving a right to sue letter, Wile filed this lawsuit in superior court asserting causes of action against Johnson Window Films for disability and age discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, subd. (a)),[2] failure to accommodate disability (§ 12940, subd. (m)), failure to engage in an

---

[1] In support of its motion the company submitted financial statements for the years 2007 through 2011.

[2] Statutory references are to the Government Code unless otherwise indicated.

4

interactive process to determine reasonable disability accommodations (§ 12940, subd. (n)), wrongful termination in violation of public policy and unfair and unlawful business practices under the Unfair Competition Law (Bus. & Prof. Code, § 17200). The complaint alleged Johnson Window Films terminated Wile after it was apparent he would need continued accommodation for his "difficulty walking ('Disability') that limited his physical and social activities along with his ability to work" and replaced him, or transferred his duties to, someone substantially younger. In addition to compensatory and general damages, Wile sought punitive damages.

        3. *Johnson Window Films' Motion for Summary Judgment*

In June 2012 the company moved for summary judgment or, alternatively, summary adjudication. With respect to Wile's causes of action for disability and age discrimination, wrongful termination in violation of public policy and unfair business practices, Johnson Window Films asserted it had terminated Wile for a legitimate, nondiscriminatory business reason: Given the company's ongoing financial difficulties, Wile's prospecting calls were not producing a sufficient number of sales to justify maintaining a sales position with such limited responsibilities. Regarding Wile's cause of action for failure to accommodate his disability, the company argued it was untimely because Wile had failed to file a complaint with the DFEH within one year of the purported violation, which it described as occurring in 2008, and, in any event, the company did accommodate his requests for time off for medical appointments and to work from home—the only requests he made. As for failure to engage in the interactive process, the company moved only on the ground the DFEH complaint was untimely.

In opposition Wile asserted there were triable issues of material fact whether his termination was motivated by discriminatory animus, rather than financial hardship. For example, Wile argued the company was doing significantly better in 2011 than during previous years and it was "nonsensical to employ an employee from 2008-2011 if he was not needed or if Johnson really was suffering such a harsh financial situation"; the company had opened a new facility in Europe and a warehouse in Tennessee during this period of supposed financial hardship; and other terminated employees were quickly

5

replaced. Wile further challenged whether he was underperforming and his position contributed little to company sales. Characterizing his performance between 2008 and 2011 as "excellent," he argued in part "statistical evidence" demonstrated he was responsible for 50 percent of prospective new customer entries and 18 percent of new customers, more than any other sales associate, and his job was not unnecessary inasmuch as other sales associates used the yellow pages to find prospective clients. With respect to whether he had exhausted his administrative remedies in a timely manner, Wile argued the limitations period did not begin to run until he was terminated because that was the date on which the company was no longer willing to accommodate his disability.

The "statistical evidence" Wile proffered was pie charts depicting "prospective entries" from November 17, 2008 through January 3, 2010 and June 1, 2010 through June 15, 2011 by sales representative and "customers brought into Johnson" by sales representatives (exhibits K, L and M). Counsel for Wile, Tamara Freeze, attached the charts to her declaration, describing them as true and correct copies of the underlying information, rather than summaries or compilations of the data. Freeze also attached as exhibit O what appears to be an image of a digital storage drive, stating in her declaration, "Because of the massive amount of data contained in Exhibit O, a true and correct copy of the sales data produced by Johnson, an electronic copy of Johnson's call reports[,] customers and prospects will be submitted to the Court."

The company objected to the charts on several grounds: "[Wile] fails to authenticate the chart. The chart was not created by [Johnson Window Film] and it is not an official business record of [Johnson Window Film]. [Wile] does not provide any foundation as to how [Wile] obtained the chart, who created the chart, how the chart was created, or the information used to create the chart . . . ." The company also objected Freeze had no personal knowledge and the evidence constituted improper expert opinion. Based on a declaration by the company's controller that had been submitted with its reply papers, the company argued it had been unable to confirm the data or replicate the calculations reflected in the exhibits. With respect to exhibit O, the company objected it

6

"purports to be sales data produced by [Johnson Window Films]. However, [Johnson Window Films] produced to [Wile] a disc containing approximately 70,000 pages of electronic data relating to [Johnson Window Films'] sales activities. Exhibit O is not the actual disc that [Johnson Window Films] produced to [Wile] and therefore [Johnson Window Films] has no way of knowing whether the disc contains the exact 70,000 pages of data that [Johnson Window Films] produced and/or whether the data has [*sic*] been altered in any way. Thus, the exhibit lacks necessary authentication."

On the day of the hearing Freeze filed a supplemental declaration explaining the charts were graphic representations of data produced by the company in electronic format and exhibit O was an exact copy of the electronic folders (entitled call reports, customers, prospects and sales journals) produced by Johnson Window Films; the folders contained more than 70,000 documents, which would be impractical to print and submit to the court. At oral argument on the motion for summary judgment Freeze clarified the "statistical evidence" was not actually a "statistical analysis," but was an "exact representation of the data that was [*sic*] given to [Wile] in the picture form. There [are] no additional calculations. . . . No analysis was added to it."

4. *The Trial Court's Order Granting Summary Judgment*

The trial court granted the company's motion, finding Wile had failed to present sufficient substantial responsive evidence to show the company's proffered, legitimate nondiscriminatory reason for terminating him was pretextual. The court also found there was insufficient evidence the company failed to accommodate Wile's disability or engage in the interactive process. The court overruled Wile's evidentiary objections and sustained Johnson Window Films.' Judgment was entered in favor of Johnson Window Films on December 5, 2012.

**DISCUSSION**

1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

7

We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Schachter v. Citigroup, Inc*. (2009) 47 Cal.4th 610, 618; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) The evidence must be viewed in the light most favorable to the nonmoving party. (*Schachter,* at p. 618.)

When a defendant moves for summary judgment in a situation in which the plaintiff would have the burden of proof at trial by a preponderance of the evidence, the defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. Alternatively, the defendant may present evidence to "'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (Code Civ. Proc., 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield, Co.* (2001) 25 Cal.4th 826, 853 .) "'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,"' the elements of his or her cause of action." (*Wilson v. 21st Century Ins. Co*. (2007) 42 Cal.4th 713, 720; accord, *Kahn v. East Side Union High School Dist*. (2003) 31 Cal.4th 990, 1002-1003 ["the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence'"].)

2. *Summary Adjudication Was Properly Granted as to Wile's Claims for Discrimination, Wrongful Termination and Unfair Business Practices*

a. *Governing law*

FEHA prohibits an employer from, among other things, discriminating against a person on the basis of physical disability or age in compensation, terms, conditions or privileges of employment. (§ 12940, subd. (a); see § 12941 [Legislature "reaffirms and declares its intent that the courts interpret the state's statutes prohibiting age discrimination in employment broadly and vigorously, in a manner comparable to prohibitions against sex and race discrimination"].) To establish a claim for

discrimination (disparate treatment) in violation of FEHA in circumstances comparable to those presented by the case at bar, a plaintiff must establish that he or she was a member of a protected class, was performing competently in the position he or she held, was terminated or suffered some other adverse employment action and the plaintiff's protected status was a substantial motivating reason for the discharge or other adverse employment action. (See *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214-215, 232; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 356-357 (*Guz*).) Discriminatory intent is a necessary element of a discrimination claim. (§ 12940, subds. (a), (h); see *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 662; *Mixon v. Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1316.)

An employer moving for summary judgment on a FEHA cause of action for discrimination may satisfy its initial burden of proving a cause of action has no merit by showing either that one or more elements of the prima facie case "is lacking, or that the adverse employment action was based on legitimate nondiscriminatory factors." (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038; see *Guz*, *supra*, 24 Cal.4th at pp. 356-357; *Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 150.) Once the employer sets forth a nondiscriminatory reason for the decision, the burden shifts to the plaintiff to produce "'substantial responsive evidence' that the employer's showing was untrue or pretextual." (*Martin v. Lockheed Missiles Space Co.* (1994) 29 Cal.App.4th 1718, 1735; accord, *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147, 1156; see also *Guz,* at p. 357.) "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz,* at p. 361; see also *Kelly v. Stamps.com Inc*. (2005) 135 Cal.App.4th 1088, 1097-1098 [if a defendant employer's motion for summary judgment "relies in whole or in part on a showing of nondiscriminatory reasons for the [adverse employment action], the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the

9

[adverse action].  [Citations.]  To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred"].)

Pretext may be demonstrated by showing "'the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge.'" (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 224; see also *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005 [pretext may be shown by "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them "unworthy of credence" and hence infer "that the employer did not act for the [asserted] non discriminatory reasons"'"].)

"At least three types of evidence can be used to show pretext:  (1) direct evidence of retaliation, such as statements or admissions, (2) comparative evidence, and (3) statistics." (*Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 816; see *Alch v. Superior Court* (2008) 165 Cal.App.4th 1412, 1428 ["[s]tatistical proof is indispensable in a disparate impact case"].)  To be probative, however, comparative data and statistical analysis must be directed at showing disparate treatment between employees that are "similarly situated" to the plaintiff in all relevant respects.  (*Guz, supra,* 24 Cal.4th at p. 369 [plaintiff in discrimination case failed to show pretext through statistical data on employees that were not "similar or comparable"]; see *Iwekaogwu*, at p. 817 ["comparative evidence of pretext . . . [is] evidence that [plaintiff] was treated differently from others who were similarly situated"]; see generally Chin et al., Cal. Practice Guide:  Employment Litigation (The Rutter Group 2012) ¶ 7:466, p. 7-84.9 (rev. #1, 2011) ["The critical factor for comparative evidence is that the compared employees must be similarly situated in all respects to plaintiff.  The burden is on plaintiff to make this showing."].)  Circumstantial evidence may also be used to raise a triable issue of material fact that an employer's action was more likely than not motivated by a discriminatory reason, but the circumstantial evidence must be both ""'"specific"'"" and

"'"substantial."'" (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69; accord, *Batarse v. Service Employees Intern. Union, Local 1000* (2012) 209 Cal.App.4th 820, 834.)

> b. *Wile failed to produce substantial responsive evidence Johnson Window Films' reason for terminating him was pretexutal*

The company presented abundant evidence its decision to terminate Wile was based on a legitimate business reason: The company was experiencing ongoing financial difficulties; Wile was engaged in limited sales solicitation activities and was not producing enough customers of the right type to justify his continued employment. Thus, the burden on summary judgment shifted to Wile to produce substantial responsive evidence from which a reasonable trier of fact could conclude the company's showing was pretextual. (*Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740, 755; *Martin v. Lockheed Missile Space Co., supra*, 29 Cal.App.4th at p. 1735.) Wile failed to meet this burden.

Wile did not offer any direct evidence of statements or admissions of intentional discrimination. Instead, he contends he presented adequate responsive circumstantial evidence challenging the company's claim its decision was motivated by financial problems to raise a triable issue of material fact. Wile explains he was terminated at a time when the company, although still losing money, was admittedly doing better financially and even had opened a few facility in Europe and a warehouse in Tennessee. Why, he argues, would he be retained during the worst times and then fired as the company was improving its financial condition if not because of discriminatory animus?

Wile's argument is not persuasive. Although the company's annual performance was improving, its cumulative loss and 2010 annual loss were significant and in no way support an inference the company was not experiencing considerable financial hardship in 2011 when it decided to terminate Wile. With respect to the European facility, Davidson explained the company had leased the facility in 2005 and opened it in 2006 before the company's financial picture began to deteriorate. As for the Tennessee distribution center, Davidson explained it actually saved the company $100,000 to

11

$200,000 during its first year of operation in 2011 because it minimized shipping expenses.

Similarly, the fact the company replaced personnel instead of eliminating positions entirely beginning in 2009 fails to demonstrate the business justification for Wile's termination was pretextual. There is no dispute the company, dependent on selling a product, was losing money. Evidence the company attempted to replace employees with performance-related issues instead of simply eliminating their positions is insufficient to support a rational inference the company was not experiencing financial difficulty or that its decision to discharge Wile was not motivated by economic concerns.

Wile also asserts he presented substantial evidence undermining the company's contentions his performance was poor in 2011 and his position unnecessary, including the three-year sampling of data purporting to show prospective entries and customer originations by sales representative, the absence of negative performance reviews for the seven years preceding his termination, and the testimony of other sales representatives that they made cold calls as part of their responsibilities. Wile's performance in 2011, however, was not directly at issue. The company terminated Wile because his job—making cold calls to sales prospects found on the Internet or using national telephone directories—was of limited utility, whether he was performing it well nor not, and thus he was the most logical candidate for termination. Moreover, these sales employees to whom Wile compared his performance and treatment, contending they were subject to progressive discipline and received performance counseling Wile was not offered, had a significantly broader range of responsibilities, including calling current customers, placing orders and account management. Evidence that cold calling, Wile's sole job responsibility, was among the tasks performed by these other employees does not demonstrate they and Wile were similarly situated or even raise a triable issue of fact on that point. (See *Guz*, *supra*, 24 Cal.4th at p. 369 ["[a]ny inference that Guz's raw age comparisons indicate age-based discrimination is further blurred by the weak evidence that the workers retained or hired over him were similar or comparable except for their dates of birth"; "six individual members of the eliminated unit . . . performed distinct

12

duties at disparate ranks and levels of responsibility"]; see also *Vasquez v. County of Los Angeles* (9th Cir. 2003) 349 F.3d 634, 641 ["individuals are similarly situated when they have similar jobs and display similar conduct"].)[3] Accordingly, because Wile's job was fundamentally different from these employees', evidence he was treated differently from them is insufficient to permit a rational inference the company's motive for terminating him was discriminatory.

Our conclusion Wile failed to offer substantial responsive evidence that would permit a finding of pretext is not affected by the trial court's ruling sustaining the company's objections to the data compilations Wile submitted in opposition to the motion. Because his sale position was unique, even if that evidence were considered, Wile's showing would fall short of that required to defeat summary adjudication on the discrimination claims.

In any event, the trial court's decision to exclude that evidence was well within its discretion. (See *Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1111 [trial court's evidentiary rulings are reviewed for abuse of discretion].)[4] Freeze's initial declaration failed to properly authenticate the charts, which purported to summarize information in a manner that the company's controller testified could not be duplicated or replicated. Freeze's supplemental declaration filed the day of the hearing did little to

---

[3] Because Wile was not similarly situated to the other sales representatives, evidence, if any, that his duties were redistributed to younger employees and the company generally tolerated infractions by younger employees does not create a triable issue of fact with respect to his age discrimination claim. (See *Earl v. Nielsen Media Research, Inc* (9th Cir. 2011) 658 F.3d 1108, 1113 ["plaintiff may raise triable issue of pretext through comparative evidence that the employer treated younger but otherwise similarly situated employees more favorably than the plaintiff"]; *Guz*, *supra*, 24 Cal.4th at p. 369.)

[4] Although Wile continues to refer to exhibits K, L, M and O as "statistical evidence" and argues statistical evidence may support a showing of pretext, the evidence is simply summaries of data presented as percentages, not the kind of statistical analysis required to support a showing of pretext. (See *Carter v. CB Richard Ellis, Inc.* (2004) 122 Cal.App.4th 1313, 1323-1326; see generally1 McCormick on Evidence (7th ed. 2013) Correlations and Causes: Statistical Evidence of Discrimination, § 209.)

13

remedy the defects. The declarations taken together at best established the company had produced electronic copies of 70,000 documents, which were too voluminous to print for the court. There is no indication how the summaries were prepared, who prepared them or in what form the underlying data were maintained (that is, in a spreadsheet or database management program). More is required for a data compilation to be admissible. (See Evid. Code, § 1552, subd. (a) ["[i]f a party to an action introduces evidence that a printed representation of computer information or computer program is inaccurate or unreliable, the party introducing the printed representation has the burden of proving, by a preponderance of evidence, that the printed representation is an accurate representation of the existence and content of the computer information or computer program that it purports to represent"].)

  c. *Wile's wrongful termination and unfair business practices claims fail for the same reason as his FEHA discrimination claims*

Wile's causes of action for wrongful termination in violation of public policy and unfair business practices are grounded on his contention he was terminated because of his age, his disability and his request that the company accommodate his disability, not the ongoing financial difficulties the company was confronting and his own lack of productivity. For the reasons discussed above (and, with respect to the request for accommodation, in the following section of this opinion), the company demonstrated it had a legitimate, nondiscriminatory business reason to fire Wile, and Wile failed to establish a triable issue of material fact on pretext. Accordingly, as with his discrimination claims, the trial court properly granted summary adjudication on the wrongful termination and unfair business practices causes of action.

  3. *Summary Adjudication Was Properly Granted as to Wile's Claim for Failure To Accommodate His Disability*

FEHA makes it unlawful for an employer to fail to reasonably accommodate an employee's known physical or mental disability, unless the accommodation would produce a demonstrable undue hardship. (§ 12940, subd. (m).) "'The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the

14

plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability.'" (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 971.)

"'[R]easonable accommodation' means 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.' [Citation.] '"Reasonable accommodation" may include either of the following: [¶] (1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities. [¶] (2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.'" (*Furtado v. State Personnel Bd*. (2013) 212 Cal.App.4th 729, 745.)

Wile's failure to accommodate claim is premised on the contention the company penalized him by stripping him of his responsibilities when it granted his request to work from home in 2008. This challenge to a purportedly adverse employment action three years after it occurred is plainly untimely. (§ 12960, subd. (d).) Moreover, there is absolutely no evidentiary support for this theory of liability. Wile testified several times during his deposition his responsibilities were limited in mid-2006, not in 2008 when he was finally permitted to work from home. Indeed, in support of his opposition to the motion for summary judgment, Wile proffered a portion of his personnel records that confirms his salary was changed to $35 per hour and "position changed to outbound caller on varying territories at supervisor's discretion – okay to work less than 40 hours/wk" on June 1, 2006. As discussed, there is ample evidence performance issues precipitated the 2006 change to Wile's job responsibilities, and Wile presents no competent evidence otherwise.[5]

---

5    Remarkably, Wile also contends the company's decision to move his desk from the second floor to the first floor so he would not have to walk up stairs after he returned from his second surgery is evidence of discrimination, not accommodation. No

15

Finally, Wile contends his termination in June 2011 constituted a failure to accommodate his disability. As discussed, the company established it had a legitimate business reason for terminating Wile. Wile has not presented any evidence that would permit a finding that reason was pretextual.

### 4. *Summary Adjudication Was Not Properly Granted as to Wile's Claim the Company Failed To Engage in the Interactive Process*

In its motion for summary judgment the company challenged Wile's cause of action for failure to engage in the interactive process only on the ground Wile had failed to timely exhaust his administrative remedies. Both parties briefed the issue. The trial court, however, did not reach it, finding instead Wile had failed to present any evidence the company had not fully satisfied its obligation under FEHA to engage in the interactive process. By deciding the motion on a ground not specified in the company's notice of motion, the trial court erred. (See *Gonzales v. Superior Court* (1987) 189 Cal.App.3d 1542, 1545 ["It is elemental that a notice of motion must state in writing the 'grounds upon which it will be made.' [Citations.] Only the grounds specified in the notice of motion may be considered by the trial court. [Citations.] This rule has been held to be especially true in the case of motions for summary adjudication of issues."]; see also *Luri v. Greenwald* (2004) 107 Cal.App.4th 1119, 1125 ["[a] basic principle of motion practice is that the moving party must specify for the court and the opposing party the grounds upon which that party seeks relief"]; *Geary St., L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1199-1200 [generally only grounds specified in notice of motion may be considered by the trial court].)

Although the court erred in granting this aspect of the company's motion on a ground not identified in its moving papers, the company correctly argues we can affirm an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court if, as is the case here, it has been fully briefed by the parties. (Code Civ. Proc., § 437c, subd. (m)(2) [conditions upon which reviewing court may

reasonable finder of fact could agree with that distorted interpretation of the company's action.

affirm order granting summary judgment on ground not relied upon by trial court]; see *Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39 [supplemental briefing not required before court affirms summary judgment on ground not relied upon by trial court when parties had addressed the issue in their appellate briefs; "[t]he purpose of section 437c, subdivision (m)(2) has thus been fully met"]; *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147 [same]; see also *California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546.) Accordingly, were the company's argument that Wile failed to timely exhaust his administrative remedies well taken, we could affirm the trial court on that basis. It is not.

Before pursuing a private civil action under FEHA, a plaintiff must file an administrative complaint with the DFEH within one year of the date of the alleged unlawful employment practice. (§ 12960, subd. (d); see *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 117 [FEHA provides that "administrative charge must be filed within one year from the date of the discriminatory act"].) According to the company, Wile alleged it had failed to engage him in the interactive process before he was allowed to work from home in 2008. His claim is thus untimely, the company asserts, because he did not file an administrative complaint with the DFEH until October 2011.

Wile's cause of action for failure to engage in the interactive process is not so limited. Rather, Wile has alleged the company failed to engage in the interactive process when it decided it no longer wished to accommodate his disability and terminated him in June 2011, only a few months before he filed a complaint with DFEH. Indeed, at oral argument on the motion the company's counsel acknowledged the broader scope of this claim, explaining it raised the limitations issue because Wile "had said something about not accommodating him in 2006 or 2008, something like that, and if [counsel] was going to raise that, we addressed that. But in [Wile's] papers the failure to accommodate, failure to engage in the interactive process, those [Wile] said were because he was terminated, and so if the termination is valid, then those claims go away . . . ."

17

The company may be correct Wile's claim for failure to engage in the interactive process cannot stand if there was no disability discrimination.  But, as discussed, it is not entitled to an order granting a motion for summary judgment or summary adjudication on that ground without first moving for it.  And it is not entitled to such an order on the ground advanced because Wile's claim, whatever its merit, was properly asserted within one year of the allegedly unlawful conduct.

## DISPOSITON

The judgment is reversed and the matter remanded for the trial court to vacate its order granting summary judgment and to enter a new order granting Johnson Window Films' motion for summary adjudication as to all causes of action except for failure to engage in the interactive process and denying the motion as to that claim.  Each party is to bear his or its own costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

SEGAL, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.