Filed 7/18/14  Nichols v. County of Los Angeles Child Support Services CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHELLE NICHOLS, | B244094 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC451011) |
| v. | |
| COUNTY OF LOS ANGELES CHILD SUPPORT SERVICES DEPARTMENT, | |
| Defendant and Respondent. | |

　　　　APPEAL from judgment of the Superior Court of Los Angeles County, Elizabeth Allen White, Judge.  Affirmed.

　　　　Law Offices of Andrew M. Wyatt and Andrew M. Wyatt for Plaintiff and Appellant.

　　　　Martin & Martin, LLP, Areva D. Martin, Eileen Spadoni and Steven H. Taylor for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiff Michelle Nichols sued her employer, the County of Los Angeles Child Support Services Department (the Department), for discrimination and retaliation under the Fair Employment and Housing Act, Government Code section 12960, et seq. (FEHA). The trial court granted the Department's motion for summary judgment and awarded prevailing party attorney fees, concluding the Department had legitimate, nondiscriminatory and non-retaliatory reasons for the challenged employment actions. We affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

1. *The Competitive Application Process and Plaintiff's Initial Total Exam Score*

Plaintiff has been employed as an attorney with the County of Los Angeles (the County) since 1998. She has worked as an Attorney II with the Department since August 2003.

In 2008, Plaintiff applied for a promotion to one of four available Attorney III positions with the Department. The competitive application process was administered by the Department's Exams Unit and was comprised of two components, each weighted at 50 percent: (1) a multiple choice examination, testing the applicant's knowledge of the law applicable to child support issues; and (2) an assessment of the applicant's ability to perform at the higher position, referred to as an "Appraisal of Promotability" or "AP score".

---

[1] The facts we recite are drawn largely from the Department's separate statement of undisputed facts, which Plaintiff either conceded or did not effectively counter with admissible evidence. (See, e.g., *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 340, fn. 1; *R. P. Richards, Inc. v. Chartered Construction Corp.* (2000) 83 Cal.App.4th 146, 151, fn. 3.) To the extent Plaintiff offered additional or competing facts on a material issue, we state the evidence admitted by the trial court in the light most favorable to Plaintiff, as the nonmoving party, in accordance with the standard of review applicable to summary judgments discussed *post*.

Prior to the examination, each applicant received a Study Reference Guide, which identified the laws and regulations that would be covered on the multiple choice test. To pass the multiple choice portion, each applicant was required to score a minimum of 70 percent on the test.

The applicants were then evaluated by the Appraisal of Promotability Committee (the AP Committee), which determined the applicants' AP scores based on the average of their overall ratings on their two most recent performance evaluations. In general, the AP Committee weighted an applicant's overall ratings as follows:

a. "Outstanding" ratings were assigned a score of 100;

b. "Very Good" ratings were assigned a score of 90; and

c. "Competent" ratings were assigned a score of 80.

Both components—the multiple choice test score and the AP score—were then averaged together to calculate each applicant's "total exam score." Based on their total exam scores, the applicants were separated into tiers called "Bands" as follows:

a. "Band 1": total exam score of 95 to 100;

b. "Band 2": total exam score of 89 to 94;

c. "Band 3": total exam score of 83 to 88;

d. "Band 4": total exam score of 77 to 82; and

e. "Band 5": total exam score of 70 to76.

In compliance with the County's Civil Service Rules, the open positions were filled by those applicants who placed in the highest ranked bands. In 2008, the highest band achieved by any applicant was Band 2, and all four of the open Attorney III positions were filled by applicants who placed in that band. One of those successful applicants was unmarried at the time.

Plaintiff received a score of 71.91 percent on her multiple choice examination, and an AP score of 90, based on two "Very Good" ratings that Plaintiff received on her most recent performance evaluations. The average of these two components yielded a total exam score of 81, placing Plaintiff in Band 4.

## 2. *Plaintiff's Protest and Increased Total Exam Score*

According to Plaintiff, her supervisor, Barbara Catlow, told her that she gave Plaintiff an AP score of 100, however, Howard Strauss, a member of the AP Committee, told Catlow that he intended to lower Plaintiff's score. Plaintiff did not say whether Catlow told her why Strauss had decided to lower her score. Nevertheless, Plaintiff was disturbed that a member of the AP Committee, who did not supervise her, had lowered her score.

Based in part on her conversation with Catlow, Plaintiff submitted a protest to the Department of Human Resources-Appeal Division, arguing her AP score did not accurately reflect her prior performance evaluations. Plaintiff asserted the AP Committee had failed to consider the "entirety" of her performance evaluations, specifically the fact that her overall ratings had been "Very Good +," which should have raised her AP score to "95 or higher." Plaintiff also challenged the multiple choice examination, arguing that the test results should have been subject to review or thrown out entirely, because the "disparity between all the examinees' written examination score and AP score [*sic*] shows that the examination is not a good testing of the ability to perform the work of a Child Support Services Department attorney." Plaintiff, however, stipulated that "[i]f my AP score is raised to 95 or higher, I would withdraw the remainder of this appeal." The Department of Human Resources denied Plaintiff's protest.

Plaintiff appealed her protest to the Civil Service Commission, again arguing that her AP score failed to account for the "Very Good +" ratings she received on her most recent performance evaluations, and that the multiple choice examination should be thrown out due to the "disparity between all of the examinees' written examination scores and the AP scores of those same candidates." Plaintiff also asserted the Department had a history of promoting using race as a basis and that, despite handling the duties of an Attorney III for several years, she was the only "African American attorney in the lead attorney position for an extended period of time" that had not been promoted to Attorney III.

While Plaintiff's protest to the Civil Service Commission was pending, the Department of Human Resources revisited its decision regarding Plaintiff's AP score. Ultimately, the Department reversed its decision and raised Plaintiff's AP score from 90 to 95, as she had requested. The higher AP score increased Plaintiff's total exam score to 83, which moved her to Band 3. However, due to Plaintiff's score of 71.91 percent on the multiple choice examination, even an increased AP score of 100 would have resulted in a total exam score of only 86, still placing her in Band 3—below the Band 2 ranking from which the four Attorney III positions were filled.

3. *Plaintiff's Transfer to South Los Angeles*

In her Civil Service Commission protest, Plaintiff alleged she had been performing the duties of an Attorney III, despite her Attorney II designation. Pursuant to a County Code section that requires management to either promote a civil service employee or return the employee to an in-class assignment once the employee requests relief from an out-of-class assignment, the Department conducted an investigation and concluded that Plaintiff was performing one of the duties specified for the Attorney III position.[2] Although Plaintiff was not performing all the functions of an Attorney III, the Department was concerned that it could be found out of compliance with the rule.

After assessing the attorney positions at the Central Civil West location where Plaintiff worked, the Department determined there were no positions that involved only Attorney II job functions. However, the Department identified an open Attorney II position in its South Los Angeles office, which Plaintiff had listed as a "preferred work location" due to its proximity to her home in Culver City. The Department approved the transfer and notified Plaintiff that her assigned location had been changed to correct the "misalignment" between her job classification and some of the job functions she had performed at Central Civil West.

---

[2] According to the Department's undisputed evidence, the relevant County Code section defines an "out-of-class assignment" as "the permanent, full-time performance of all the significant duties of an allocated, vacant, funded position in a higher level class by an individual in a lower level class."

Plaintiff filed a protest with the Civil Service Commission, alleging the transfer was an attempt to discriminate and retaliate against her for her prior protests. The Department investigated the charges and concluded the allegations were "not substantiated."

4.      *The Summary Judgment and Attorney Fee Award*

On December 9, 2010, Plaintiff filed this civil action against the Department, asserting four causes of action under FEHA for (1) race discrimination based on the Department's decisions not to promote and to transfer Plaintiff; (2) marital status discrimination based on the decision not to promote; (3) failure to prevent discrimination based on the Department's alleged failure to thoroughly investigate and take corrective actions with respect to Plaintiff's discrimination allegations; and (4) retaliation based on Plaintiff's transfer to the South Los Angeles office following her Civil Service Commission protest.

On August 28, 2012, the trial court granted the Department's motion for summary judgment. With respect to Plaintiff's discrimination claims based on the decision not to promote, the court determined Plaintiff had not suffered an adverse employment action and that the Department's evidence established a legitimate nondiscriminatory reason for its decision—namely, Plaintiff's placement in Band 3, due to her low multiple choice examination score. As for the retaliation and race discrimination claims based on Plaintiff's transfer to the South Los Angeles office, the court likewise concluded Plaintiff did not suffer an adverse employment action and that the Department had a legitimate nondiscriminatory reason for its decision—namely, the County Code mandate requiring the Department to remedy Plaintiff's out-of-class assignment. Finally, the court determined Plaintiff could not maintain an action for failure to prevent discrimination absent a cognizable claim that discrimination occurred.

6

On September 18, 2012, the trial court entered judgment for the Department. The same day, the superior court clerk mailed a minute order to the parties, which stated "Judgment is signed, filed and entered this date." On November 21, 2012, the Department served notice of entry of judgment.

On December 12, 2012, the Department filed a motion for attorney fees pursuant to Government Code section 12965, subdivision (b). After receiving Plaintiff's opposition and supplemental briefing concerning Plaintiff's ability to pay an attorney fee award, the trial court granted the Department's motion. The court concluded Plaintiff's action was "unreasonable" and "without foundation" based on the undisputed evidence adduced in connection with the Department's summary judgment motion, and that the lodestar calculation supported an attorney fee award of $107,508. Based on Plaintiff's gross annual income, the court concluded she had the ability to pay 50 percent of that amount, in the total sum of $53,704.

## DISCUSSION

1. *The Trial Court Properly Granted the Department's Summary Judgment Motion*

   a. *Standard of review and the three-stage McDonnell Douglas test for employment discrimination claims*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

A defendant is entitled to summary judgment upon a showing that the plaintiff's action has no merit. (Code Civ. Proc., § 437c, subd. (a).) The defendant meets this burden with respect to each cause of action by establishing undisputed facts that negate one or more elements of the claim or state a complete defense to the cause of action. (*Id.*, subd. (p)(2); *Romano v. Rockwell Internat., Inc.* (1996)14 Cal.4th 479, 487.) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to the cause of action or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, 853 (*Aguilar*).)

In the employment discrimination context, case law has refined the foregoing burden-shifting analysis to incorporate the three-stage *McDonnell Douglas* test used to try discrimination claims.[3] (See *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097 (*Kelly*); *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1004-1005 (*Scotch*); see also *Guz, supra,* 24 Cal.4th at p. 354.) Under the *McDonnell Douglas* test, a plaintiff employee who claims discrimination must first make a prima facie case, consisting of evidence showing (1) the plaintiff was a member of a protected class; (2) the plaintiff was qualified for the position he or she sought or was performing competently in the position held; (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) some other circumstance suggests a discriminatory motive. (*Guz,* at p. 354-355.) Once the employee satisfies this burden, there is a presumption of discrimination, and the burden

---

[3]     "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes. [Citation.] In particular, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment." (*Guz, supra,* 24 Cal.4th at p. 354, citing *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.) "This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." (*Guz,* at p. 354.)

then shifts to the employer to show that its action was motivated by legitimate, nondiscriminatory reasons. (*Id*. at pp. 355-356.) A " 'legitimate' " reason is one that is "facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." (*Id*. at p. 358, italics omitted.) If the employer meets this burden, the presumption disappears, and the employee, who retains the overall burden of persuasion, then must show the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination. (*Id*. at p. 356.)

As the court explained in *Kelly,* "[a] defendant employer's motion for summary judgment slightly modifies the order of these showings" under the *McDonnell Douglas* test. (*Kelly, supra,* 135 Cal.App.4th at p. 1097.) If the employer's summary judgment motion "relies in whole or in part on a showing of nondiscriminatory reasons for the discharge, the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination." (*Id.* at pp. 1097-1098, citing *Aguilar, supra,* 25 Cal.4th at pp. 850-851; *Guz, supra,* 24 Cal.4th at p. 357.) "To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred." (*Kelly,* at p. 1098, citing *Aguilar,* at pp. 850–851; *Guz,* at p. 357.) In determining whether these burdens were met, the court must view the evidence in the light most favorable to the plaintiff, as the nonmoving party, drawing all reasonable inferences in the plaintiff's favor. (*Aguilar,* at p. 856; *Kelly,* at p. 1098.)

> b.     *The undisputed evidence establishes Plaintiff was denied a promotion due to her low examination score; Plaintiff failed to adduce evidence of pretext or intentional discrimination based on race or marital status*

Like the trial court, we conclude the Department's evidence established a plausible nondiscriminatory reason for the decision not to promote Plaintiff. The Department's evidence showed there were 35 applicants competing for only four open Attorney III positions, and the promotion decisions were made through a competitive process that

9

included an objective multiple choice examination, testing the applicants' knowledge of the law applicable to child support issues. Plaintiff received the same study materials as the other applicants and took the same multiple choice examination, but she scored only 71.91 percent on the test—just above the 70 percent threshold required to be considered for the promotion. As for the other half of Plaintiff's total exam score, the AP Committee originally assigned Plaintiff an AP score of 90, based on her two most recent Performance Evaluation ratings. After Plaintiff protested that her "Very Good +" ratings should have yielded an AP score of 95, the Department raised her score, but the increase still placed Plaintiff in Band 3 of the applicant rankings. In compliance with the County's Civil Service Rules, the open positions were filled by four applicants whose total exam scores placed them in Band 2—the highest ranking achieved by any applicant in 2008. This evidence, all of which is uncontroverted, would permit a trier of fact to find, more likely than not, that Plaintiff was denied the promotion due to her low examination score—not because of her race or marital status. (See *Guz, supra,* 24 Cal.4th at p. 357; *Scotch, supra,* 173 Cal.App.4th at pp. 1004-1006.)

Once the Department established a legitimate nondiscriminatory reason for its decision, the burden shifted to Plaintiff to present evidence that the Department's stated reason was pretextual or that the Department acted with discriminatory animus. Plaintiff failed to meet this burden. Though she quarreled with aspects of the application process, Plaintiff has never offered any evidence to suggest that race or marital status, as opposed to her low exam score, was a probable reason for the Department's decision. For instance, Plaintiff points to the conversation she had with Catlow as evidence that the AP Committee lowered her AP score to 90 from the score of 100 that Catlow, Plaintiff's supervisor, had recommended. But Plaintiff offered no evidence as to why the AP Committee purportedly lowered her score, let alone evidence to suggest that the decision was the result of discriminatory animus. Indeed, in her deposition testimony concerning the conversation with Catlow, Plaintiff said she was upset by the fact that members of the

AP Committee, *who did not supervise her work*, had lowered her score—not that she believed race or marital status factored into the decision.[4]

Plaintiff also points to the fact that she was "never allowed to review her [multiple choice] examination to see what errors she made, [and] was not provided with the answer key or correct responses to see whether the written test was score[d] objectively." But here too, while Plaintiff quarrels with the examination procedure, she offers nothing— beyond speculation—to suggest discriminatory animus was the cause of her low test score. (See *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735 (*Martin*) [for the purpose of averting summary judgment by showing the employer's stated reason was untrue or pretextual, "speculation cannot be regarded as substantial responsive evidence"].) Notably, when Plaintiff raised the issue in her protest to the Civil Service Commission, Plaintiff was concerned about the "disparity between *all of the examinees'* written examination scores and the AP scores of those same candidates" (italics added)—not that she had been singled out due to her race or marital status.

Finally, Plaintiff contends there has been disparate treatment of African Americans and unmarried employees in the Attorney III promotion process. In that regard, Plaintiff cites evidence that there are 10 African American attorneys in the Department, but only three have been promoted to Attorney III or higher. Similarly, Plaintiff contends, without any evidentiary support, that there are only two unmarried employees in Attorney III positions, which she argues is "a very small percentage given the percentage of single and married [people] in society at large."[5] Apart from these bare

---

[4] In any event, the issue concerning Plaintiff's AP score is not material. The undisputed evidence shows that, due to Plaintiff's low score on the multiple choice examination, she still would have placed in Band 3, even if her AP score had been 100.

[5] There are several problems with this contention from an evidentiary standpoint. First, the only evidence in the record concerning the number of unmarried employees promoted to Attorney III came from Tatiana Moskova's declaration in support of the Department's summary judgment motion. In her declaration, Moskova testified that (1) the Department does not keep track of the marital status of employees; (2) she nevertheless knew of at least *five* unmarried employees promoted to Attorney III; and (3) one of those unmarried employees was promoted in 2008, as part of the same

11

figures, Plaintiff offers no explanation as to how or why the Department's promotion procedures have caused this purported disparity.

Contrary to Plaintiff's apparent premise, raw statistical data is alone insufficient to establish disparate treatment. In addition to an adverse impact, a plaintiff also must demonstrate that "the challenged policy was chosen 'because of its effect on members of a protected class.' " (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 824 (*Frank*).) Thus, where the employer has established a plausible nondiscriminatory reason for its decision, the employee cannot create a triable issue merely by showing the decision negatively impacted a protected class. (See *Guz, supra,* 24 Cal.4th at pp. 366, 370 [where employer made showing that plaintiff's discharge was based on non-age-related reasons, plaintiff's "raw age comparisons" failed to create a triable issue]; *Martin, supra,* 29 Cal.App.4th at pp. 1734-1735[statistics indicating an increase in terminations of employees over 40 was insufficient to forestall summary judgment in the face of employer's evidence of "valid and fair procedures validly and fairly applied without regard to [plaintiff's] age"].)

As we have discussed, the Department established that its decision to deny Plaintiff's promotion was made through a competitive, and largely objective, application process. Plaintiff's raw statistical data, unmoored to any evidence that the process was instituted to adversely affect African Americans or unmarried employees, was

competitive application process in which Plaintiff participated. Further, Plaintiff's "percentage" figures are essentially speculative, because there is no evidence concerning the marital status of the 100-employee base pool. As the Department observes, "[t]his information is critical for obvious reasons; e.g., two people out of 100 is not probative of disparate treatment if the 98 other constituents of the sample population are all married." Likewise, Plaintiff's comparison to the "percentage of single and married [people] in society at large" is hardly probative, since Plaintiff offered no evidence of what that percentage is.

12

insufficient to avert summary judgment on a theory of disparate treatment.[6]  (See *Frank,*
*supra,* 149 Cal.App.4th at pp. 824, 833; *Martin, supra,* 29 Cal.App.4th at pp. 1734-1735.)

        c.      *The undisputed evidence establishes Plaintiff was transferred to*
                     *correct her out-of-class assignment; Plaintiff failed to adduce*
                     *evidence of racial discrimination or retaliation*

The three-stage *McDonnell Douglas* test applies to FEHA retaliation claims as
well.  (*Loggins v. Kaiser Permanente Internat*. (2007) 151 Cal.App.4th 1102, 1108-1109
(*Loggins*).)  Thus, even without challenging the plaintiff's prima facie case, an employer
moving for summary judgment can satisfy its burden by producing evidence showing a
legitimate non-retaliatory reason for the alleged adverse employment action.  (*Id.* at
p. 1109)  Once this showing is made, "the burden shifts . . . to the employee to provide
'substantial responsive evidence' that the employer's proffered reasons were untrue or
pretextual."  (*Ibid.*)

Plaintiff claims she was transferred to South Los Angeles because of her race and
in retaliation for filing a protest with the Civil Service Commission.  The Department's
uncontested evidence showed Plaintiff was transferred to remedy an out-of-class
assignment, pursuant to a County Code provision requiring the Department to take
immediate corrective action once it learns an employee is working out-of-class.  This
evidence was sufficient to shift the burden to Plaintiff to raise a triable issue material to
the Department's plausible non-retaliatory reason for the transfer decision.

---

[6]     For the same reason, Plaintiff's reliance on the deposition testimony of Robert
Woodard, another African American employee who has not been promoted to
Attorney III, is misplaced.  Woodard's testimony discloses that although he ranked in
Band 1 on an oral examination administered in 2002, no one out of any of the bands was
promoted that year.  When asked if he felt he had been discriminated against in that
examination, Woodard responded he was "uncertain" why he was not promoted.  At best,
Woodard's testimony raises speculation as to why he was not promoted.  More to the
point, his testimony is immaterial to the Department's showing that Plaintiff was not
promoted because of her low test score on an objective multiple choice examination.
(See *Martin, supra,* 29 Cal.App.4th at pp. 1734-1735.)

Plaintiff does not dispute that the Department was required to take corrective action to remedy her out-of-class assignment.  Nevertheless, Plaintiff argues pretext can be inferred because it would have been as easy to promote her to Attorney III since she was "successfully working in the position" for years.  We disagree.

" 'A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.' " (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1011.)  Thus, it is not enough to argue the Department could have taken some other action to accomplish what was undisputedly a nondiscriminatory and non-retaliatory purpose—i.e., complying with the County Code.  To avert summary judgment, Plaintiff was required to present evidence showing that this stated purpose, more likely than not, was merely a pretext for discrimination and retaliation.  (*Loggins, supra,* 151 Cal.App.4th at p. 1108.)  Plaintiff's contention that it would have been as easy to promote her to achieve the Department's legitimate purpose is not evidence of pretext.

           d.     *Absent evidence of actual discrimination, Plaintiff cannot maintain a failure to prevent/correct discrimination claim*

Government Code section 12940, subdivision (k) makes it unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Not surprisingly, "courts have required a finding of actual discrimination or harassment under FEHA before a plaintiff may prevail under section 12940, subdivision (k)."  (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925, fn. 4; *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289 [endorsing trial court's "commonsense approach," reasoning " '[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred . . . .' "].)

We need not belabor this point.  Plaintiff concedes that reversing the trial court's rulings on Plaintiff's race or marital status discrimination claims is a necessary predicate to reversing the court's ruling on her failure to prevent discrimination claim.  Because we have concluded Plaintiff failed to raise a triable issue on her discrimination claims, it follows that she cannot maintain an action for failure to prevent discrimination.

2.	*The Trial Court Did Not Abuse Its Discretion in Granting the Department's Attorney Fee Motion*

a.	*The Department timely moved for attorney fees*

Plaintiff contends the trial court lacked jurisdiction to award attorney fees because the Department purportedly failed to bring its motion within the time provided by rule 3.1702 of the California Rules of Court.  Plaintiff is mistaken.  As a preliminary matter, it is settled that the time limitation set out in rule 3.1702 is not jurisdictional in character and a trial court has broad discretion in allowing relief from a late filing where there is no showing of prejudice to the opposing party.  (*Gunlock Corp. v. Walk on Water, Inc*. (1993) 15 Cal.App.4th 1301, 1304; *Hoover Community Hotel Development Corp. v. Thomson* (1985) 168 Cal.App.3d 485, 487-488.)  Here, however, we need not address whether prejudice was shown, because the record establishes the Department's motion was timely.

California Rules of Court, rule 3.1702(b)(1) provides:  "A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court . . . must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108."  Rule 8.104, subdivision (a)(1) specifies that a notice of appeal must be filed on or before the earliest of:  (A) 60 days after the superior court clerk serves "a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, showing the date either was served"; (B) 60 days after a party serves "a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, accompanied by proof of service"; or (C) 180 days after entry of judgment.

Plaintiff contends the 60-day clock started running on September 18, 2012, when the superior court clerk mailed a minute order that read "Judgment is signed, filed and

15

entered this date." The relevant legal authorities dispel this contention. Due to its jurisdictional character, rule 8.104, from which rule 3.1702 borrows its time limitations, has been strictly construed to adhere to the legislative purpose behind the statute. As the court explained in *20th Century Ins. Co. v. Superior Court* (1994) 28 Cal.App.4th 666, 672, "Since the time within which an appeal must be filed is jurisdictional, rules that measure that time must stand by themselves without embroidery. The Judicial Council has promulgated a rule to guide counsel and courts: if the clerk sends out a document styled 'notice of entry' of judgment . . . , or sends out a date-stamped copy of the judgment . . . , the [first 60-day period under rule 8.104] starts to run. Otherwise it does not." The minute order upon which Plaintiff premises her timeliness argument was neither entitled "Notice of Entry," nor did it include a date-stamped copy of the judgment. Hence, the minute order did not start the 60-day clock on the Department's time to file its attorney fee motion. (See *Alan v. American Honda Motor Co., Inc*. (2007) 40 Cal.4th 894, 898, 905 [minute order mailed by the clerk, entitled " 'RULING ON SUBMITTED MATTER/MOTION FOR CLASS CERTIFICATION' " did not commence 60-day period for filing a notice of appeal from the order].)

On November 21, 2012, the Department served notice of entry of judgment. On December 12, 2012, well within the 60-day period, the Department filed and served its timely motion for attorney fees.

    b.  *The trial court properly exercised its discretion*

Government Code section 12965 authorizes an award of attorney fees and costs to the prevailing party in any action brought under FEHA. The statute provides, in pertinent part, "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees." (Gov. Code, § 12965, subd. (b).) Consistent with the statutory language, we review an award of attorney fees under this section for an abuse of discretion. (*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387 (*Cummings*).)

Due to the symmetry between California and federal antidiscrimination statutes, California courts have adopted the principles developed by federal courts in employment discrimination claims arising under Title VII of the federal Civil Rights Act. (*Guz, supra,* 24 Cal.4th at p. 354.) In *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412 (*Christiansburg*), the United States Supreme Court set forth the standard trial courts must use in awarding attorney fees to a prevailing defendant in an employment discrimination case. In view of the purpose of the fee provision in the federal statute—to " 'make it easier for a plaintiff of limited means to bring a meritorious suit' " (*id.* at p. 420)—the *Christiansburg* court reaffirmed that a prevailing plaintiff " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " (*Id.* at pp. 416-417.) However, because the "equitable considerations counseling an attorney's fee award to a prevailing Title VII plaintiff . . . are wholly absent in the case of a prevailing Title VII defendant" (*id.* at p. 418), the court held a defendant should be awarded attorney fees " 'not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious.' " (*Id.* at p. 421.) The *Christiansburg* court explained "the term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case." (*Ibid.*; see *Cummings, supra,* 11 Cal.App.4th at pp. 1387-1388; *Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 921-923.)

Here, the trial court found that the evidence adduced in connection with the Department's summary judgment motion established "Plaintiff's lawsuit was unreasonable and without foundation." In making this finding, Plaintiff contends the trial court "confuse[d] a non-meritorious case with one that is frivolous or baseless." We disagree.

17

This was not a case of "post hoc reasoning" by the trial court, where the lack of foundation finding was premised on "[d]ecisive facts [that did] not emerge until discovery or trial." (*Christianburg, supra,* 434 U.S. at p. 422.) On the contrary, as the record presented to the trial court demonstrates, in 2008, Plaintiff was fully informed of the competitive application procedure used to award the four open Attorney III promotions. Though Plaintiff challenged her AP score—principally on the ground that the AP Committee had no direct supervision over her work—she conceded that the multiple choice portion was neutrally administered and applied to "all examinees," without regard to race or marital status. And, before filing her complaint, Plaintiff was well-aware that her low multiple choice examination score had been the sole cause for her ranking in Band 3, which put her out of contention for the open positions.

Similarly, at the time of her transfer, Plaintiff was aware that the transfer was necessary to comply with the County Code mandate concerning out-of-class placements. Though Plaintiff argued the Department should have simply promoted her to Attorney III—notwithstanding her low-ranking in the race-neutral application process—she concedes the Department transferred her to comply with the County Code. All told, the record sufficiently supports the trial court's finding that Plaintiff's lawsuit was unreasonable and without foundation at its inception. We find no abuse of discretion in the court's decision to award the Department half the attorney fees it incurred defending this lawsuit.[7]

---

[7]     Plaintiff does not challenge the amount of the fee award on appeal.

## DISPOSITION

The judgment is affirmed.  The defendant County of Los Angeles Child Support Services Department is awarded its costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, J.

We concur:



KLEIN, P. J.



ALDRICH, J.